## TIMOTHY SALMON *vs.* JOSEPH RICHARDSON AND OTHERS.

The directors of an insurance company fraudulently permitted false statements to be officially made and published by the president and secretary of the company as to its assets and condition, and the plaintiff was induced thereby to insure in the company. The company was at the time utterly insolvent, and after the loss of the property insured the plaintiff was able to get nothing upon his policy. In a suit brought by him against the directors it was held that they were not saved from personal liability for the injury by reason of the fact that they were acting officially.

The declaration, after alleging that the insurance company was incorporated and carrying on the business of insurance, and that the defendants were directors of the company, averred " that the said directors, the defendants, for the purpose of giving the company a fictitious credit, and to increase its business, &c., did falsely and fraudulently represent, &c.," and that the plaintiff relying upon such representations made his contract of insurance with the company. Held, that the declaration was not insufficient, by reason of the manner of alleging the acts of the defendants, for a recovery against them personally.

Held that the want of privity between the plaintiff and the defendants, by reason of the fact that his contract was with the company and not with them, did not affect his right of recovery against the defendants, since the action was founded, not upon the contract, but upon the fraud of the defendants in inducing him to make it.

Under such circumstances an action would lie although the parties were entire strangers to each other.

*R*, one of the defendants, denied his participation in the fraud, and all knowledge that certain bonds belonging to him were represented in the official statements of the president and secretary as the property of the company. Held, that evi-

Salmon *v.* Richardson.

dence was admissible on the part of the plaintiff to show that the president and another director had shortly before the publication solicited *R* to make some arrangement by which the bonds could be represented to be the property of the company.

Also, that a receipt given by him to the company acknowledging that the bonds were the property of the company and were held by him subject to its order, was admissible.

Held also, that acts of *R* after the plaintiff had taken his policy, not in themselves independent, but connected with and growing out of the previous fraudulent purpose, were admissible to show his knowledge of and participation in the fraud.

ACTION on the case, against Joseph Richardson, William H. Noble, Nathan S. Morse, H. W. Chatfield, Nathaniel Green, Daniel Hatch and Russell Tomlinson, for an injury to the plaintiff by the fraudulent representations of the defendants, as directors of the Bridgeport Insurance Company, with regard to the assets and condition of the company, by which he was induced to insure his property in the company. The fourth count of the declaration was as follows :—

And the plaintiff further declares and says, that said Bridgeport Insurance Company was duly incorporated under and by virtue of the laws of this state, in the year 1850, for the purpose of carrying on the business of insurance against loss by fire ; that by its charter said company was empowered and required to appoint a board of directors, consisting of nine persons, to be elected annually from among and by the stockholders of said company, whose duty it was to have the care, management and general supervision of the business of the company, and to see that its affairs were mannaged in a proper manner, and to see that all statements relative to its affairs, condition, business and property were properly and truly made ; that on or about the 7th day of July, 1857, a board of nine persons, among whom were the defendants, were duly elected directors of the company for the year ensuing, according to the provisions of the charter of said company ; that they accepted said appointment, and subsequently, and before the commission of the acts and grievances hereinafter complained of, entered upon the discharge of the duties of said office, and continued in the discharge thereof till on or

about the 12th day of October, 1858 ; that on or about the 1st day of February, 1858, for the purpose of giving the company a false and fictitious credit, and to increase the business of said company, and to add to their own profits as stockholders of said company, the said directors, the defendants, did falsely and fraudulently represent and publish to the world, as and for the true condition of the affairs of said company, that said company was possessed of a very large amount of property of great value, to wit, forty-five Harlem railroad first mortgage bonds, seventeen New Jersey Central railroad first mortgage bonds, and thirty-eight Bridgeport water bonds, all of which said bonds were of the par value of $97,000, and various other stocks and properties of great value, to wit, $270,000, all which property was represented by and in the statement aforesaid to be of the value of $367,147.12 ; that said directors falsely and fraudulently represented said company to be the rightful owners of said property, and to be good and solvent, to induce people to effect their insurance in and by said company, and to increase the business and profits of said company and their own profits as stockholders thereof ; that the plaintiff, relying on said representations of the directors, the said defendants, and believing the same to be true, did on or about the 13th day of February, 1858, at the special instance and request of said company, insure in said company a certain building to him belonging; situated in Granby in the state of New York, a patent tannery, so called, of the value of $1,200, on which the sum of $700 was insured by said company, and certain other stock and material of the plaintiff, situated in said tannery building, of the value of $1,000, on which the sum of $300 was insured by said company ; and the plaintiff received from said company policies of insurance in accordance with the custom of said company ; and the plaintiff paid to said company for insuring said property the sum of $100, according to the requirements of said company. And the plaintiff says that said policy of insurance has been destroyed by fire, and can not be produced in court ; that on the 8th day of October, 1858, and while said policy was in full force, said building, and said stock and materials therein, so insured,

without the fault of the plaintiff, were destroyed by fire; that the plaintiff gave notice and proof of said loss to the company, within the time and in the manner and form prescribed by said company and according to law; that he is and was the sole owner of said property so insured, and that said loss has never been paid; that at the time of said fire, for a long time previous thereto, and at the time of the publication caused and made by the directors as aforesaid, the said company was not the owner of the valuable assets hereinbefore specified and stated in said publication, nor of any valuable assets, but was wholly insolvent; all which the defendants well knew when they thus willfully, falsely and fraudulently uttered and caused to be published said false statement as aforesaid; that on or about the 4th day of May, 1858, proceedings in insolvency were instituted against said company; that on the 17th day of May, 1858, P. C. Calhoun was appointed by the court of probate a trustee in insolvency, to take into his hands and possession, for the benefit of the creditors of said company, all the goods and estate belonging to said company; and that the total amount of all the assets of said company, so delivered into the hands of said trustee for the purposes aforesaid, according to the sworn inventory and appraisal thereof as returned into the court of probate, amounted to the sum of $123.07, and no more. And the plaintiff says that by means of the false and fraudulent statements so made and caused to be made by the defendants, regarding the assets, property and condition of said company, and his, the plaintiff's, belief in the same, and consequent insurance in said company as aforesaid, and by reason of the premises aforesaid, he has suffered great loss, to his damage the sum of two thousand dollars, &c.

The case was tried to the jury in the superior court, on the general issue, before *Park, J.* Upon the trial the plaintiff offered evidence to prove, and claimed that he had proved, that he made application for insurance upon the property stated to Philip Hart, who was the legal agent of the company in the town of Fulton in the state of New York; that Hart, to induce the plaintiff to insure his property in this company, represented to him that he was well acquainted with many of the

assets of the company, and particularly with the value of the stock of the Bridgeport City Bank, which was represented to be a part of its assets ; that the assets of the company were of the first class, and that the company was highly solvent and reliable, and thereupon exhibited to the plaintiff written and printed documents containing full statements of the assets and condition of the company ; that by some of these statements it appeared that the company, on or about the 1st day of January, 1858, were the owners, among other property, of the Harlem railroad bonds, the New Jersey Central railroad bonds, and the Bridgeport water bonds, described in the declaration, all amounting to more than $367,000, to which statements all the names of the directors of the company, embracing the names of the defendants, were attached as directors of the company ; that the statements so exhibited by Hart were carefully examined and considered by the plaintiff; that being acquainted with the value of many of the securities, and particularly with the value of the Harlem and New Jersey Central railroad bonds, and relying upon the statements as true statements of the assets and condition of the company, he caused his property to be insured in the company. He also offered evidence to prove, and it was not denied by the defendants, that at the time of the application and insurance, and as far back as the 1st of July, 1857, the company was and still continued to be utterly and hopelessly insolvent and unable to pay any losses ; and that the defendants, from the 6th day of July, 1857, until the 17th day of May, 1858, were the legally chosen, duly qualified, and acting directors of the company, and that the defendant Joseph Richardson was a director in the company from its organization in June, 1854, until the 17th day of May, 1858, that he attended every meeting of the directors of the company, from the 21st day of November, 1857, until the 1st day of March, 1858, and during all of that period was employed in the business of the company. He also offered evidence to prove that the statements upon the faith of which he took his insurance in the company, and which were uttered and published in the various forms hereinafter described, were made and published with

Salmon *v.* Richardson.

the knowledge and approbation of the directors, embracing the defendants, and that they were falsely and fraudulently made by them, and particularly by the defendants Richardson, Noble and Morse, as such directors ; all of which was denied by the defendants, and particularly by the said Richardson, who claimed to be, and testified that he was, entirely ignorant that any such assets as the Harlem, New Jersey Central, and Bridgeport water bonds, described in the statements, were ever owned or claimed or represented to be owned by the company, and insisted that these bonds were his private property, and had never been owned or claimed or represented by him or the company to be the property of the company to his knowledge, and that he had not on any occasion permitted any person to represent the same as the property of the company directly or indirectly.

Upon these claims of the parties respectively the plaintiff offered evidence to prove that during the months of November and December, 1857, Mr. Courtenay, the president of the company, and Mr. Green, one of the directors, repeatedly solicited the defendant Richardson to make some arrangement by which the bonds might become, or be represented to be, the property of the company. The plaintiff also offered in evidence the books of the company, under the date of 31st December, 1857, by which it appeared that the company became the purchasers of the bonds for certain Hudson Paint Manufacturing Company stock, which was proved to be utterly valueless, in connection with evidence that the book was one of the books of the company, kept in the regular course of business by their book-keeper, and that the book was always kept openly and publicly in the office of the company, where the directors were in the habit of meeting. This evidence was objected to, but admitted by the court.

The plaintiff also offered evidence and claimed to have proved that the defendant Richardson, about the first day of January, 1858, left in the possession of the company a receipt under his hand, in which he admitted that he had received the bonds, that he held them as the property of the company, and that he would return them on demand, accompanied with proof that upon the basis of this receipt the secretary of

the company made his annual statement of the assets of the company to the comptroller of this state, describing the bonds therein as the property of the company. This statement is set forth sufficiently for the purposes of the present case, *ante*, page 217. This evidence was objected by the defendants but admitted by the court.

The plaintiff also offered evidence to show that, during the months of January and February, 1858, and prior to the 13th of February, the company caused statements of its assets and condition, in which said bonds and other property, amounting together to the sum of over $367,000, were described as the property of the company, to be published in the Bridgeport Daily Farmer, in the Bridgeport Daily Standard, in various daily New York papers, and in various monthly insurance periodicals, over the names of all the directors of the company, signing the same as directors; that all these newspapers and periodicals were regularly received during this time in the office of the company; that also, during all this time, large packages of circulars and cards containing the same false and fraudulent statements as to the assets of the company over the signatures of the directors were prepared for general distribution, and were made particularly attractive for that purpose, and were deposited in public view upon the desks and tables of the office, to attract general observation, and were extensively circulated among the agents of the company and among the people.

The plaintiff also offered in evidence a certified copy of a statement made by the company, on the 1st of January, 1858, to the comptroller of the state of New York, in which the same representations were made as to the assets and condition of the company, and as to the ownership of the bonds mentioned. This evidence was objected to by the defendants but admitted by the court. He also offered in evidence an affidavit of Nathaniel Green, then president of the company, before a commissioner acting in behalf of the comptroller of the state of New York, to which was attached the certificate of the defendant Richardson, containing the same representations. This document is set forth sufficiently for the purposes of this

case, *ante* page 213.   This evidence was objected to, but admitted by the court.

The plaintiff also offered evidence to prove that in the month of February or March, 1858, the defendant Richardson delivered to Nathaniel Green, in the city of New York, the bonds described in the declaration, in order that he might exhibit the same as the property of the company to the commissioner acting in behalf of the comptroller of the state of New York, in investigating the financial condition of the company, in order to enable the company under the laws of the state of New York to open an office in the city of New York and to effect insurances in that state.   To this evidence, which was received subject to objection, the counsel for the defendant objected on the argument before the jury as irrelevant, and requested the court to instruct the jury that it was irrelevant and not to be considered by them.   The defendants also requested the court to charge the jury that the plaintiff could not recover unless he proved that the board of directors had authorized the statements upon the faith of which the plaintiff claimed to have acted in causing his property to be insured, or had sanctioned the same, or unless such statements or the import of the same had come to the knowledge of the board when convened as a board of directors.   The court charged the jury that it was not necessary for the plaintiff to prove that the statements were made and· published under a vote of the directors at a meeting legally held for that purpose, but that it was sufficient for him to prove that the statements were made and published by the directors of the company, acting as such at any informal meeting, or in consultation together at any time, and that it was not necessary that there should be any recorded vote on the subject.

The defendants further requested the court to charge the jury that all the acts of the defendants, or any of them, after the plaintiff perfected his insurance, should be laid out of the case.   On this subject the court charged the jury as follows :

" If the plaintiff was defrauded by the defendants, the act was accomplished at the time he procured his insurance, and whatever was done by them after that time can have no bear-

ing on the case, and consequently should be dismissed therefrom, unless you are satisfied from the evidence that what was done by them afterwards has a retroactive effect in showing what existed before that time. If, for instance, there was an agreement previous to this insurance entered into by the directors of the company, and the defendants with them, to defraud the public by scattering abroad the statements that came to the knowledge of the plaintiff before this insurance, and the part assigned therein to the defendant Richardson was that he should represent, whenever necessity required, that the company owned these bonds, and afterwards, when it became necessary to satisfy the commissioner sent by the comptroller of the state of New York, of the financial condition of the company, he procured these bonds for that purpose; if the circumstances attending this transaction—his readiness in procuring these bonds, without discussion or consideration, if the fact was so—tend to show such previous agreement; then, for that purpose, the evidence would be proper, although the transaction was after the plaintiff procured his insurance. The same remarks will apply to the affidavit of Green with Richardson's certificate attached thereto. It depends altogether upon the character of these transactions whether they were proper to be received or not. If you are satisfied from the evidence that they were independent transactions, brought to the consideration of Richardson then or after this insurance for the first time, they should be banished from your consideration in this case. They can be considered only as the performance of such an arrangement as I have described. If there were any publications as to the assets of the company issued after this insurance, they should be laid out of the case."

The defendants further requested the court to charge the jury, that the entry made in the books of the company by the book-keeper thereof, in December, 1857, as to the purchase of these bonds by the company, and the annual returns made to the comptrollers of the states of Connecticut and New York, in January, 1858, by the secretary of the company, should be laid out of the case. On these points the court charged the

jury that they must be satisfied from the evidence that the directors of the company, and the defendants with them, knew of these transactions before this insurance, and sanctioned their being done, as directors of the company.

The jury returned a verdict for the plaintiff, and the defendant Richardson moved for a new trial for error in the rulings and charge of the court. He also moved in arrest of judgment for the insufficiency of the declaration, which motion was reserved with the other for the advice of this court.

*Beardsley*, in support of the motions.

1. The declaration is insufficient. The action is brought against the defendants, not as individuals, but in their official capacity. They are sued as directors. Such an action can not be sustained. Their acts were not official acts. They had no power as directors to make false representations. If however their acts are to be regarded as official, then there was no such privity between the plaintiff and the defendants as to enable the plaintiff to maintain his action. The wrong done to the plaintiff was in that case done by the company, and so far as the defendants did a wrong to the company by their improper conduct as directors, they are liable only to the company therefor. *Allen* v. *Curtis*, 26 Conn., 456. *Denny* v. *Manhattan Co.*, 2 Denio, 115. *Franklin Fire Ins. Co.* v. *Jenkins*, 30 Wend., 130. Ang. & Ames on Corp., § 312.

2. A new trial should be granted. 1st. For the improper admission of evidence. Proof of the solicitations of Greene and Courtenay, to induce the defendant Richardson to make the arrangement by which the bonds might become, or might be represented to be, the property of the company, was inadmissible. It did not prove that any such arrangement was made, and did not tend to contradict Richardson, who testified that no such arrangement was in fact made. It is not enough that the parties making these solicitations were directors of the company. They could not of themselves do any act affecting all the directors, and if this evidence was admissible against Richardson or Green, it could not be against the other

defendants.  In like manner evidence that Richardson gave
a receipt to the company acknowledging that he held these
bonds for the company was inadmissible.  The act could
have no connection with his acts as director of the company.
It was solely his individual act, not participated in by the
other directors.  It does not appear that it ever came to their
knowledge.  *Franklin Fire Ins. Co.* v. *Jenkins,* supra.  2d.
For error in the charge of the court.  The court erred in
not charging the jury that the acts of Richardson subsequent to
the issuing of the policy should be laid out of the case.  The
judge instructed them that the evidence was to be regarded as
admissible if they found that the acts were so connected with
the previous arrangement that they tended to prove such an
arrangement.  He thus left it to them to decide whether it
was admissible or not.  This was wholly irregular.  The judge
should have decided the question himself.  The evidence not
being excluded is to be regarded as admitted.  It was inad-
missible because it did not tend to prove such a previous ar-
rangement.  That arrangement should have been proved by
independent evidence.  Acts done in carrying out a con-
spiracy are not admissible in proof of the conspiracy itself,
which must be first proved by other evidence.

*Loomis* and *Hollister,* contra.

1. The declaration is sufficient.  It does not charge the
defendants as directors, but in their individual capacity.  The
fact that they were directors is only alleged as one of the facts
of the case, and an important fact, as furnishing them the
means of committing the fraud.  The directors of a corpora-
tion are personally liable for fraud or gross negligence in their
official conduct, in a suit brought by one who has been injured
thereby.  *Schley* v. *Dixon,* 24 Geo., 273.   *Waters* v. *Quimby,*
3 Dutch., 198.   *Commonwealth* v. *Dunham,* Thatcher Crim.
Cas., 538.   *Franklin Ins. Co.* v. *Jenkins,* 3 Wend., 130.   *Hill*
v. *Frazier,* 22 Penn., 320.   *Vose* v. *Grant,* 15 Mass., 505.
*Taylor* v. *Ashton,* 11 Mees. & Wels., 401.   *Harman* v. *Tap-
penden,* 1 East, 556.   *Schinotti* v. *Bumsted,* 6 T. R., 646.
*Calhoun* v. *Richardson,* 30 Conn., 210.   An agent is liable for

Salmon *v.* Richardson.

his own misfeasances in his conduct as agent. Story on Agency, §§ 308, 329.

2. All the evidence allowed to go to the jury was properly admitted. The testimony that Courtenay and Green made repeated applications to Richardson to make some arrangement by which the bonds might become or be represented to be the property of the company, was clearly admissible as tending to show Richardson's knowledge that these very bonds were represented to be the property of the company, and also to prove that he had been put on his guard, and was guilty of gross negligence even if innocent of fraud. The evidence in relation to the receipt, containing a particular description of these very bonds, was clearly proper evidence to go to the jury, as in like manner tending to prove Richardson's knowledge that these bonds were claimed as and represented to be the property of the company. The evidence of the receipt, taken in connection with the application made to Richardson for these bonds, and also with the entry on the books, both of which acts were prior to the receipt, was most pertinently admissible, both under the charge of fraud and under that of gross negligence. The evidence relating to Green's affidavit, with Richardson's certificate, was legitimate for the purpose for which it was offered, and for which, under the instructions of the court, it was allowed to go to the jury, that is, as tending to show their previous arrangement regarding these same bonds. The jury must have found under the charge of the court, that the acts of Richardson subsequent to the insurance, in relation to the receipt, and also in relation to his delivery of the bonds to Green, to be exhibited by him to the New York commissioner as the property of the company, did show a prior knowledge and a prior arrangement that the bonds were, and were to be as occasion required, represented as the property of the company. *Lucky* v. *Roberts*, 25 Conn., 486. 1 Swift Dig., 346. The only objection raised against the admission of any of the evidence which was permitted to go to the jury, was that the plaintiff failed to bring home to the defendants a knowledge of the publications referred to. This was a question of fact for the jury to determine, and was properly left to them under

the charge of the court, that unless they were satisfied from the evidence in the case that these defendants as directors knew of and sanctioned these publications before the plaintiff effected his insurance, then the jury were not to consider them as evidence in the case.

SANFORD, J. It is unnecessary for us to examine all of the counts in this declaration, because we are satisfied that the fourth is sufficient, and upon that the plaintiff is entitled to judgment whether the other counts are good or not.

This count charges that the defendants were, and acted as, directors of the insurance company; "that for the purpose of giving the company a false and fictitious credit, and to increase the business of said company and to add to their own profits as stockholders of said company, the said directors, the defendants, did falsely and fraudulently represent and publish to the world, as and for the true condition of the affairs of said company, that said company was possessed of a very large amount of property of great value, to wit, forty-five Harlem railroad first mortgage bonds," &c., amounting in all to $367,147.12; "that the said directors of said company falsely and fraudulently represented said company to be the rightful owners of said property, and to be good and solvent, to induce people to effect their insurances in and by said company, and to increase the business and profits of said company and their own profits as stockholders thereof; that the plaintiff, relying on said representations of the directors of said company, the said defendants, and believing the same to be true," at the special instance and request of the said company insured his building &c., in said company, and paid to the company a premium on such insurance amounting to $100; that the insured property was destroyed by fire; and that at the time of the publication caused and made by the directors as aforesaid, and at the time of said fire and for a long time previous thereto, said company was not the owner of the valuable assets before specified and enumerated, and contained in said publication, nor of any valuable assets, but was wholly insolvent; all which the defendants well knew when they thus willfully,

falsely and fradulently uttered and caused to be published said false statement as aforesaid ; " and that by means of the premises, &c., the plaintiff has suffered great loss, &c.

The defendant Richardson claims that the publication complained of is charged to have been made by the defendants acting as directors of the insurance company, and that no action can be maintained against them for any thing done by them while acting in that capacity.

We will not stop now to inquire whether, upon the true construction of this count, the false and fraudulent publication complained of is charged to have been made by the defendants when acting in their official, or in their personal character, because we think that the law regarding the defendants' liability, in any aspect of it, is not as the defendants claim. If it is, it ought speedily to be amended in order to relieve it from just reproach.

Directors of a corporation in the management of its affairs are the power which gives expression to its will, but it is no part of their duty to perpetrate crimes or frauds in its name or for its benefit, and whatever the liability of the corporation may be, the individuals who under cover of their office of directors commit frauds like those charged against these defendants, ought to be, and in our judgment are, upon the clearest principles of law and justice, accountable for their conduct in a civil action at the suit of the injured party.

It is true that the contract of insurance was made with the corporation, and not with its directors, and that no suit could be maintained *upon that contract* against such directors, whatever agency they may have had in making it. It was the contract of the corporation and not of its directors, and there was therefore, as the defendants claim, no *privity of contract* between the plaintiff and these defendants. But this action is not founded upon any contract, or to obtain damages for the breach of one. The plaintiff's claim is that these defendants, availing themselves of the facilities afforded by their office and position of directors, have perpetrated a flagitious fraud upon him, for the benefit of the corporation, and their own pecuniary profit and emolument as stockholders thereof ; that they

individually made, and concurred in the making and publishing of, the statement that the affairs of the company were in a sound and prosperous condition, knowing it to be false, and intending to deceive and defraud all property holders who might be induced thereby to insure their property in that company.

And whether directors of a corporation are to be regarded as its agents or its elements, impartial justice and public policy both require that, as all natural persons are, so they should be held responsible to third persons for the misfeasances by them in fact committed or commanded.

In the case of *Goodspeed* v. *The East Haddam Bank*, 22 Conn., 530, the contest between the parties was whether the corporation could be held responsible for the malicious and wrongful act of its directors. The bank was held responsible; but neither in that case, nor in any other which has fallen under our notice, has it been decided that the actual active perpetration of a wrong to the rights or property of another can find protection under the charter of a corporation, any more than in the command or authority of a natural superior. The familiar principles applicable in the case of positive torts committed by servants and ordinary agents, must be applied to the misfeasances of directors also.

It may sometimes be difficult to prove the actual participation of individual directors in the acts complained of, but the legal principle which subjects them when discovered is not affected by such contingency.

No privity between the parties, other than that which is exhibited in this count, was necessary to the maintenance of the suit. The false and fraudulent statement of the condition of the insurance company is charged to have been made and published to the world by these defendants (knowing it to be false,) to induce people to effect their insurances in and by said company. And it is averred that the plaintiff (being of course one of the persons to whom that false statement was addressed) giving credit to such false statement insured his property in said company ; and that by means of the false and fraudulent statement so uttered by the defendants to the world,

and the plaintiff's belief in the same and consequent insurance in said company, he has suffered loss, &c. Thus the defendants' false and fraudulent publication is shown to have taken effect as they intended, in the deception and consequent loss and injury of the plaintiff, and to their own profit and advantage.

In the case of *Polhill* v. *Walter*, 3 Barn. & Ad., 114, where the defendant without authority had accepted a bill in the drawer's name as by procuration, Lord Tenterden, Ch. J., said : " Here the representation " (of authority to accept) " is made to all to whom it " (the bill) " may be offered in the course of circulation, and is in fact intended to be made to all, and the plaintiff is one of these." And in *Gerhard* v. *Bates*, 20 Eng. L. & Eq., 129, where the declaration charged that the defendant, a director and managing agent of a joint stock company, had published false statements of the condition and prospects of the company, knowing them to be false, to induce persons to purchase shares in the company, and by means of which the plaintiff had been induced to purchase, and had been injured and suffered loss thereby, Crompton, J., remarked, that although a contract required privity, he did not see that if one injured a mere stranger he might not sue for the injury. Coleridge, J., said : " It (the false statement) amounts to a representation to any person who may hold the shares." And Lord Campbell, Ch. J., in giving judgment said :—" We consider it clear law that if *A* fraudulently makes a representation which is false to *B*, meaning that *B* shall act upon it, and *B* believing it to be true does act upon it and thereby suffers damage, *B* may maintain an action against *A* for the deceit, there being here the conjunction of wrong and loss, entitling the injured party to a compensation for damages." And in regard to the want of privity between the parties, he said :—" The doctrine can not apply to an action founded, irrespective of a contract, upon a false representation fraudulently made by the defendant to the plaintiff for the purpose of inducing the plaintiff to act upon it, the plaintiff showing that by so acting upon it he has suffered damage. Under such circumstances, although the parties be entire

strangers to each other, the action lies, and it would be strange if a man who has suffered damage from the wrongful act of another were without remedy." In *Allen* v. *Curtis*, 26 Conn., 456, cited by the defendants' counsel, the complaint was that the defendants, being directors of a bank, had mismanaged its affairs, and rendered it insolvent and the plaintiff's stock therein worthless. This court held that the action could not be maintained, because the defendants in the management of the affairs of the corporation were its agents, and responsible to it alone for the manner in which they discharged their duties as such agents; and the property squandered was the property of the corporation, so that the plaintiff had no legal interest in the cause of action. And in *Denny* v. *The Manhattan 'Co.*, 2 Denio, 115, the defendants, being transfer agents of the Planters' Bank of Tennessee, refused to make or permit a transfer to be made on the books of the Planters' Bank in their possession. The court held that the plaintiff's remedy was against the Planters' Bank, not against its agent; upon the same principle that would subject an innkeeper and exonerate his servant, for the refusal of the latter to receive and entertain a guest in his master's inn, or would subject a common carrier and exonerate his servant, for the latter's refusal to carry goods in his master's wagon. In these cases the legal obligation rests upon the superior, to whom alone the agent or servant is responsible for his fidelity, and the wrong complained of is in the servant a mere nonfeasance, when the remedy of the injured party is always against the superior alone. In the case at bar the defendants were guilty, not of a mere nonfeasance toward the plaintiff or neglect of duty toward the insurance company, but were the active perpetrators of a positively wrongful act, intended to operate, and in fact operating, directly and injuriously upon the plaintiff's rights. See remarks of Jackson, J., in *Vose* v. *Grant*, 15 Mass., 519.

Two objections are taken to the ruling of the court below in admitting evidence.

First, it is claimed that the plaintiff's evidence to prove that the president of the company and another director, in Novem-

ber and December, 1857, solicited Richardson to make an arrangement by which certain valuable bonds might become, *or be represented to be*, the property of the company, was irrelevant and ought to have been rejected. We think it was properly admitted. Upon the trial it was conceded that Richardson was a director of the company from its first organization until several months after the plaintiff's policy was issued in February, 1858, and that as early as the first day of July, 1857, six months before the publication of the false statements complained of, the company was and ever since had been utterly insolvent ; that the bonds in question never were the property of the company, although by the published statement made on the first day of January, 1858, they were represented to be so ; and Richardson testified that he did not know that the company ever claimed the bonds, or that the bonds were ever represented to be the property of the company. Certain entries in the books of the corporation also showed the purchase of these bonds by the company of Richardson, on the 3d of December, 1857, in exchange for certain worthless stocks of the Hudson Paint Manufacturing Company. But the plaintiff claimed that the exchange indicated by those entries was merely colorable, made under an arrangement between Richardson and the other directors, in order that the bonds might, for fraudulent purposes, be represented to be the property of the company while they were not so in fact. And to prove such fraudulent arrangement it was proper to show that just prior to the date of those entries such an arrangement was proposed to Richardson by the other directors, then the entries on the corporation books to which Richardson and all the other directors at all times had access, and then, that within a month after the date of those entries, Richardson acknowledged in writing that the bonds were the property of the company, and that he held them as such, and promised to return them on demand. Thus was presented a well connected chain of facts and circumstances, from which the jury might fairly infer that the statement complained of was fraudulently made and published, with the knowledge, consent and approbation of Richardson, as the plaintiff claimed.

It is to be observed that the proposition to Richardson was not to procure the bonds by a *bona fide* purchase or exchange only, but to make some *arrangement* by which the bonds might become, *or be represented to be*, the property of the company; and that the entries on the books showed not merely an exchange of these bonds, but an exchange of them for worthless stock, while the bonds were themselves of great value.

The very terms of the proposition indicate a fraudulent purpose in the party making it, especially when it is considered that the company was, and for nearly six months had been, insolvent, that the party making it and the party to whom it was made were all directors of the company and presumed to be cognizant of its condition, and that the time for making the annual statement of the company affairs was near at hand. The receipt is evidence that the proposition to make *some arrangement* had been accepted, while its peculiarity indicated the character of that arrangement.

The receipt therefore, to the admission of which in evidence the second objection is made in this court, was properly admitted.

It is unnecessary for us to consider whether the evidence of Richardson's leaving his receipt with the company was admissible as against the other defendants or not, because it does not appear that the court was requested to restrict its operation to the case of Richardson alone, and as to him it was undoubtedly admissible, both to prove his knowledge of and participation in the fraudulent statement, and to contradict his own testimony that he was ignorant, and therefore innocent of the fraud. And besides, none of the defendants except Richardson now claim that the evidence was admissible. He alone files this motion.

Lastly, we think the defendants objection to the charge ought not to prevail. It is certainly true that evidence of false statements, representations or other acts, after the plaintiff's insurance was effected, and having no reference to what had transpired before, should have been laid out of the case, because such subsequent acts could have had no influence

upon the plaintiff when he effected that insurance ; and so the judge told the jury. · But it is equally true that the conduct and declarations of the defendant after the insurance, may have been such as to indicate the existence of a combination between Richardson and the other defendants prior to the insurance, to perpetrate the fraud complained of. And we think that Richardson's delivery of the bonds to Green, in order that they might be exhibited to the New York commissioner as the property of ·the company, is a fact from which, and from the circumstances accompanying it, the jury might infer the existence of such combination. For why, it may be asked, were these bonds applied for and delivered to Green, in order that they might be used to deceive the New York commissioner. And how is it to be accounted for that they were, for that purpose or any other, delivered over without discussion or negotiation, but upon the supposition of a prior agreement that they should be used by the directors for such a purpose when the necessities of the company should require ? We think the evidence of the delivery of these bonds by Richardson to Green was not only admissible, but the fact of such delivery was in our judgment highly significant of such prior understanding or agreement. The conduct of Richardson and Green in relation to the delivery of these bonds seems to us unaccountable upon any other hypothesis.

The evidence therefore was legally admissible, so that the defendant has no reason to complain of the charge, even if the question of the admissibility of the evidence was, as he claims, submitted to the jury, because the only effect of the mistake, if one was made, was to give the defendant an opportunity to take the opinion of the jury upon a question which would and ought to have been decided against him by the court.

Both of the defendant's motions ought to be denied.

In this opinion the other judges concurred.