WILLIAM C. REDFIELD, APPELLEE, v. ELMER J. LAMB ET AL., APPELLANTS.

FILED APRIL 4, 1919. No. 20309.

1. **Fraud: SALE OF CORPORATE STOCK: MISREPRESENTATIONS: LIABILITY OF OFFICER.** A director or other officer of a corporation who approves a report respecting the value of corporate stock that contains untrue and misleading statements of material facts, and which report is used, with his knowledge, to induce another to purchase stock in such corporation, may become personally liable to a purchaser who in reliance thereon is defrauded thereby.

2. ——: ——: ——: Evidence: Sufficiency.  Evidence examined, and *held* sufficient to support the verdict.

Appeal from the district court for Lancaster county: William M. Morning, Judge. *Affirmed.*

*Peterson & Devoe,* for appellants.

*George A. Adams, T. F. A. Williams* and *Clark Jeary,* contra.

Dean, J.

Plaintiff recovered a verdict and judgment for $1,600 against the defendants, Graf, Putman and Lamb, as damages on account of alleged fraudulent representations made by defendants by which plaintiff was induced to buy 20 shares of corporate stock in the Farmers Hog & Cattle Powder Company at $100 a share. The defendants appealed.

For two or three years defendants were engaged as partners in the manufacture and sale of stock powder, stock dip, and the like. About a month before plaintiff purchased the stock the partnership assets were taken over by the corporation and it became the successor of the partnership. Just before the succession was effected defendants procured C. M. Wilson, an accountant, to make a report respecting the partnership assets and liabilities. So much of the report as appeared on the corporate books that is material to this inquiry follows: "C. M. Wilson, an accountant, employed for the purpose, reported to the board of directors that the gross present worth of the association, including interest of its members, was $20,564.48, less liabilities of $5,234.23, net present worth $15,330.25." The Wilson report was unanimously adopted and approved on January 26, 1915, by the board of directors, consisting solely of defendants, who were all present and voting. The board meeting was held a little more than a month before plaintiff bought the stock in question. In their brief defendants say: "The corporation

had no assets and conducted no business until on and after January 26, 1915," and that the partnership assets were "turned over to the corporation on January 26, 1915." So that the corporate assets on that date consisted solely of the assets obtained from the late partnership. It was not shown that the corporation had any additional assets when plaintiff made his purchase.

Plaintiff contends that the Wilson report was misleading and fraudulent, in that it did not include all of the liabilities of the partnership at the time they were taken over by the corporation. He points out that some of the undisclosed liabilities arose from the fact that the partnership took notes of customers, ranging from a few dollars to $500 and over, and that a small amount of goods were sold at the time to the makers of the notes, thus leaving the difference between the value of the goods purchased and the face of the customer's note as a liability against the company. The proof fairly shows that the liabilities that were not included in the Wilson report were a little more than $4,000.

Defendants contend that they cannot be held for anything in the Wilson report that may have misled plaintiff. But Mr. Graf testified on this point: "Q You had this report made by Mr. Wilson for just such a purpose to have it to hand out to men like Mr. Redfield who were thinking of putting new cash into the company? A. To a certain extent." There was other testimony of a like nature. Graf testified that he and Putman told plaintiff to go to the office of the corporation at Lincoln, and that C. M. Wilson "would show him the books or anything that he might want to know in regard to the business." In pursuance of that conversation, Redfield testified that he went to the Lincoln office and saw Wilson, who showed to him the report.

Putman testified that he and Graf met plaintiff in Graf's bank and told him that they would like to have

him take "about $5,000, that we would like to have him have as much as the rest of us have got." That statement in effect informed plaintiff that each of the defendants had invested $5,000 in the enterprise. A reasonably prudent man would give to it that meaning. But it was not the fact, as appears from a stipulation in evidence wherein it is conceded that from the organization of the company until January 26, 1915, each of the defendants paid in $400, and no more, "making an aggregate of $1,200, one-half of which was paid at the beginning of 1913 and one-half at the beginning of 1914." It was not shown that any of the three defendants paid in any additional money before March 10, 1915, which was the date of plaintiff's purchase. Plaintiff testified that Putman told him that the company had made approximately $15,000 in two years out of a small investment, and that Lamb told him that the business had been making them a great deal of money. Plaintiff testified that he relied on the Wilson report, believing it to be true, and also on the statements of the defendants, and that in reliance thereon he purchased the 20 shares of stock for $2,000.

Defendants argue: (1) That "a stockholder cannot sue individually for injuries affecting the corporate or collective rights." The answer to this argument is that plaintiff did not sue for injuries affecting the rights of the corporation, but for injuries affecting his individual rights. A director or other officer of a corporation who approves a report respecting the value of corporate stock that contains untrue and misleading statements of material facts, which report is used, with his knowledge, to induce another to purchase stock in such corporation, may become personally liable to a purchaser who in reliance thereon is defrauded thereby. Clark, Law of Corporations, sec. 210; 7 R. C. L. 485-487, secs. 466-468; *Carruth v. Harris*, 41 Neb. 789.

It is also argued by defendants: (2) "Representations of the value, present or prospective, of corporate

assets and stock of a corporation, which by their nature are necessarily speculative, are not actionable." The rule invoked by defendants is not applicable to a case where it has been clearly shown that the officers of the corporation had superior knowledge as to the facts affecting the value of the corporate stock, and where an investigation would be required to discover the truth. *Carruth v. Harris*, 41 Neb. 789; *Abts Co. v. Cunningham*, 95 Neb. 836; 12 R. C. L. 293, sec. 58. Clearly the statements and representations on which plaintiff testified that he relied were those of fact as distinguished from mere matter of opinion.

Defendants' final argument that the verdict is not supported by the evidence cannot be upheld. In a record consisting of approximately 1,200 pages, exhibits included, there is some conflict in the evidence, but the verdict is amply sustained. The jury were fairly instructed on every contested phase of the case.

We find no reversible error. The judgment is

AFFIRMED.

Rose and Cornish, JJ., not sitting.