EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, Respondent, vs. STARKWEATHER, Appellant.

*January 17—February 15, 1944.*

For the appellant there was a brief by *Lueck, Skupniewitz & Lueck* of Beaver Dam, and oral argument by *A. W. Lueck*.

For the respondent there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *Arnold R. Petersen*.

FRITZ, J. On this appeal it suffices to note the following. In the first cause of action in its amended complaint, plaintiff claims to have stated a cause of action against defendant for

fraud and deceit on his part, as the result of which plaintiff sustained damages which it claims to be entitled to recover in an action *ex delicto*. Briefly stated, plaintiff's allegations are to the following effect. During the years 1935 to 1938, inclusive, plaintiff was the workmen's compensation insurance carrier under policies issued by it to the Lannon Quarries Corporation (herein referred to as the "insured"). Under the provisions of the policy the premiums to be paid to plaintiff were to be based upon the entire remuneration earned, during each policy period, by all employees of the insured; and it bound itself to faithfully and honestly report monthly in writing to the insurer the entire remuneration paid by the insured to all its employees during the period covered by each pay-roll report,—including the name of each employee, the kind of work performed, and the hours or days worked by him, his rate of compensation, and the wages or remuneration paid to each employee. During all of the period covered by the policies defendant owned and held two hundred fifty of the outstanding two hundred sixty-seven shares of the capital stock of the insured, and was its president, treasurer, director, and manager, and in sole and complete control of all of its business, property, and affairs; and its office force consisted of defendant and a bookkeeper-stenographer, who did its stenographic work, and kept its books and made its reports under the sole supervision and control of defendant; and he was charged with and undertook to perform the duty of preparing and making the insured's monthly pay-roll reports and remittances, required under said policies to be made to plaintiff. During the period covered by the policies, defendant wilfully and intentionally, and for the purpose of deceiving plaintiff as to the entire remuneration earned by all the employees of the insured and for the purpose of defrauding plaintiff of a substantial portion of the premium actually earned on such policies, failed to include, and falsely and fraudulently failed to report to plaintiff on said monthly pay

rolls, large amounts of the total entire remuneration actually earned by all the employees of the insured, and falsely and fraudulently withheld and failed to remit to plaintiff the premiums actually earned and due on the amounts so unreported, which premiums, when computed under the then existing rates and manual provisions, amount to a total of $3,612.08 for said years 1935 to 1938. During said years plaintiff, in computing and collecting the premium earned on said policies, relied upon defendant's reports and representations respecting the entire remuneration paid by insured to all its employees during the policy periods; and had defendant rendered accurate and true monthly pay-roll reports as required, plaintiff could have computed and collected from the insured the premium actually earned on the policies, or, in the event of nonpayment of any monthly instalment, could and would have avoided subsequent loss of premium by prompt cancellation of the then current policy. On July 5, 1940, the insured was adjudged a voluntary bankrupt in the federal district court, and there will be little, if any, dividend paid to the insured's general creditors out of the proceedings in bankruptcy. Due to said false and fraudulent representations of defendant, and plaintiff's reliance thereon, it has been fraudulently deprived by defendant of the said sum of $3,612.08.

Defendant, in a verified answer, denied most of the allegations in plaintiff's complaint, excepting that defendant was the president, treasurer, and a director of the insured; that the plaintiff issued the policies, and the premiums thereon were to be paid to plaintiff by the insured on the entire remuneration paid by it to all its employees, and that it was bound to faithfully and honestly report such remuneration in writing to plaintiff; that the insured has been adjudicated a bankrupt; and that defendant has refused to pay the $3,612.08 which plaintiff claims due from him as damages sustained as the result of his fraud and deceit. As a separate defense defendant alleged that a dispute arose between plaintiff and the insured

with respect to whether certain workmen cutting stone for the insured were in its employment or were independent contractors, and whether those men should be reported as its employees; that after conferences between plaintiff and its auditors and attorney, and the insured and defendant, it was agreed on October 28, 1939, by way of adjustment of such dispute and to settle the same, that the insured be charged with specified amounts as additional premiums on the policies as covering workmen as employees and not as independent contractors; that such adjustment and settlement agreement was reduced to writing on October 28, 1939, and the first four amounts specified therein make up the total of $3,612.08 claimed by plaintiff in its first cause of action; and that by such agreement plaintiff released and it was its intention to release the insured of and from any and all claims, demands, actions, and causes of action which plaintiff had or might claim against the insured by reason of the said dispute, and the items of labor involved therein and of all claims and demands set out in the complaint herein; and that as a matter of law such release and discharge of the insured operated also as a release and discharge of defendant from all claims and causes of action of plaintiff set out in the complaint.

On his motion for summary judgment, defendant relies upon the effect which he claims must be given the settlement agreement of October 28, 1939; and as supplemental to the allegations in relation thereto in his answer, defendant relies upon statements in his affidavit that the settlement agreement was entered into by plaintiff after it had investigated every phase of the alleged failure to pay the premiums due; that at a conference on the day before the agreement was made, the parties, after some discussions as to the pay roll, agreed upon the amount due for premiums; that plaintiff had access at all times to the insured's books and records; and that the agreement was intended to adjust all differences between plaintiff and the corporation, including the demand set out in the

amended complaint; and in connection therewith defendant sets forth in his affidavit the allegations in plaintiff's original complaint in this action as to the execution of the settlement agreement.

Plaintiff, in opposing defendant's motion for summary judgment, relied upon the allegations in its amended complaint and statements to the following effect in an affidavit made by C. W. Hansen, its vice-president and chief auditor; and in an affidavit by Ruth B. Schwanke, a former bookkeeper and stenographer employed by defendant and the insured, to wit:

Hansen's affidavit: Upon the filing of the insured's schedules and its statement of assets after it was adjudged a voluntary bankrupt on July 5, 1940, and upon the examination of the bankrupt's records and the examination of the defendant Starkweather under oath as to the bankrupt's affairs, plaintiff and the affiant first learned that the insured, acting by and through defendant, had executed and delivered to him, on September 28, 1939, a chattel mortgage covering all its personal property, equipment and assets, and also an assignment of all its notes and accounts receivable and cash on hand and in the bank; and that defendant had immediately seized, by virtue of said chattel mortgage and assignment, all of the insured's property and assets, excepting its real estate and fixtures, and had sold the same to himself by foreclosure proceedings completed on October 27, 1939, which was the day before the execution of the settlement agreement on October 28, 1939, so that when it was negotiated and executed, the insured had no personal property, equipment, machinery, assets or money with which to operate its business, all of which was then known to defendant, and not known to plaintiff or affiant, until August or September, 1940; that in January 1941 plaintiff, through affiant, first learned that the defendant had wilfully and fraudulently withheld the earnings of veneer cutters from the monthly reports made to plaintiff for the purpose of defrauding plaintiff of the premium actually earned on the amounts so withheld; and likewise learned that defendant, as a part of his scheme to defraud plaintiff had planned

and actually carried into effect the closing down of the operations of the insured and the transferring of all its business to Lannon Stone Company, whereby all of the insured's business was turned over to Lannon Stone Company so that when February 1st, 1940, arrived the insured had no business or property, but the same was in full operation by Lannon Stone Company, a dummy corporation owned and controlled completely by defendant; that at the same time plaintiff, through affiant, likewise first learned that the alleged contracts in writing between the insured and its veneer cutters were phoney and not *bona fide* agreements, but were made up for the purpose of misleading and defrauding plaintiff in its dealings and negotiations with the insured; that defendant wilfully and fraudulently concealed from plaintiff the execution, delivery and foreclosure of the chattel mortgage for the purpose of inducing plaintiff to enter into the settlement agreement of October 28, 1939, whereby payments thereunder were not to commence until February 2, 1940, more than four months after the date of the mortgage, so that, as the defendant thought, the mortgage and foreclosure proceedings could not be set aside as a preference by the trustee in bankruptcy; that at the same time plaintiff through affiant, also first learned that the defendant and the insured never intended to fulfil, perform or observe any of the terms and conditions of the settlement; and that plaintiff had no knowledge or suspicion of fraud on the part of the insured or its officers, including defendant, in respect to the material allegations of the complaint herein, and particularly with respect to the matters set forth in this affidavit, until January 1941, when the affiant first learned thereof through an interview with Ruth B. Schwanke, former bookkeeper of the insured. That not until December 1940 or early in January 1941, did plaintiff or any of its representatives know or have any information that the plaintiff had, or might have a cause of action against the insured or any of its officers, including the defendant, for or on account of any fraudulent acts or conduct as set forth in the complaint or in this affidavit; and not having any such information plaintiff never had in mind the discharging or releasing of any such causes of action consciously or unconsciously, or the waiving of any remedies in respect thereto, or the electing to choose one of any two or more inconsistent remedies; and that the written settle-

ment agreement of October 28, 1939, was terminated and nullified by plaintiff before this action was commenced, and' that such agreement was induced in its entirety by the fraud of the defendant, who shows amazing temerity in daring to base his motion for summary judgment upon a technicality grounded upon a nonexistent agreement originally conceived and executed entirely upon the fraudulent misrepresentations and concealments of defendant.

Ruth B. Schwanke's affidavit: All entries made by her in the insured's books and records were made in strict conformity with the explicit instructions and under the close supervision of defendant, who was at all times in complete charge and in close touch with the insured's business and affairs, including its records, reports and books of account. When affiant was first in the insured's employ she was instructed that the veneer pay roll was to be omitted from the monthly reports of earnings of the insured's employees, which reports were submitted to the plaintiff for the purpose of computing the premium earned on the current policy of workmen's compensation insurance. She never inquired as to the reason for such omission until some time in 1939 when Roy Nuernberg, one of plaintiff's auditors, discovered apparently for the first time that the pay roll of veneer workers had not been included in the reports. She then inquired of defendant as to the reason for this omission and he stated that at one time, many years before, the insured was in financial straits and that at that time defendant decided not to include the veneer workers' pay roll for the reason that the premium payable on veneer workers was high and amounted to quite a considerable sum each year. In the late fall of 1939 defendant gave affiant explicit instructions respecting the changing of entries in insured's books of account and records relating to transactions occurring subsequent to the chattel mortgage sale of October 27, 1939, and most of which entries were inserted and back dated for the express purpose of changing the records of the company to conform with certain legal steps previously taken in respect to property and assets of the insured apparently sold or transferred to defendant, although actually, up to that time there had been no change made in the usual routine in handling such affairs, assets and property on the books and records of the insured.

Defendant, on his motion for summary judgment, contends that by reason of the written agreement of October 28, 1939, between plaintiff and the insured, there was a release of the insured from its liability to plaintiff for the unpaid premium; and that this release of the insured operated to also release defendant from any liability to plaintiff under the general rule that a release of one joint wrongdoer releases all. *Kropidlowski v. Pfister & Vogel Leather Co.* 149 Wis. 421, 423, 135 N. W. 839, 39 L. R. A. (N. S.) 509.

On the other hand, plaintiff contends that by reason of the matters stated in the Hansen and Schwanke affidavits, in relation to defendant's fraudulent representations and concealment, plaintiff is entitled to have the agreement of October 28, 1939, adjudged null and void on the·ground of fraud; and that in this respect there are under the pleadings and affidavits at least such substantial issues of fact to be determined on evidence introduced on a trial of the action that the court rightly denied defendant's motion for summary judgment. *Atlas Investment Co. v. Christ,* 240 Wis. 114, 2 N. W. (2d) 714. Furthermore, plaintiff contends that the settlement intended to be effected under the agreement of October 28, 1939, was upon the express condition that there be prompt performance by the insured in accordance with certain provisions in that agreement; that there was a complete failure of such performance by the insured; and that thereupon the agreement was duly terminated by plaintiff in the manner prescribed therein, and that there was no release of either the defendant or the insured from their liability to plaintiff.

There is considerable merit in plaintiff's contentions. The facts alleged in plaintiff's first cause of action in its amended complaint, together with the facts stated in the Hansen and Schwanke affidavits, in relation to defendant's false and fraudulent representations and concealment as to facts material in respect to the amount of the premiums actually earned and owing by the insured to plaintiff, and in respect to de-

fendant's fraudulent transactions in stripping the insured of its assets and in fraudulently concealing the facts in that regard from the plaintiff so as to defeat its recovery from the insured of the amount of the premiums owing by the insured to plaintiff, appear to be sufficient, if those facts thus alleged and stated are duly established by evidence on a trial of the action, to entitle plaintiff on its cause of action in tort against the defendant to recover from him such damages as it sustained as the result of his deceit. *Salmon v. Richardson,* 30 Conn. 360; *Snowden v. Taggart,* 91 Colo. 525, 17 Pac. (2d) 305; *State ex rel. Kropf v. Gilbert,* 213 Wis. 196, 217, 251 N. W. 478; *Whitford v. Moehlenpah,* 196 Wis. 10, 219 N. W. 361; 13 Am. Jur. p. 1020, sec. 1088; *Stambaugh v. Haffa,* 217 Iowa, 1161, 253 N. W. 137; *Walker v. Howell,* 209 Iowa, 823, 226 N. W. 85; *Redfield v. Lamb,* 103 Neb. 410, 172 N. W. 48; *Ashby v. Peters,* 128 Neb. 338, 258 N. W. 639; *Windram v. French,* 151 Mass. 547, 24 N. E. 914.

Likewise, in view of the facts thus alleged in the complaint, and particularly the facts stated in the Hansen and Schwanke affidavits, on which plaintiff relies in seeking to avoid the agreement of October 28, 1939, on the grounds of fraud on the part of defendant in inducing plaintiff to enter into that agreement, there are clearly presented such substantial issues of fact as cannot be determined upon merely the pleadings and affidavits presented and relied upon on the motion for summary judgment.

Moreover, there is no provision whatever in the agreement of October 28, 1939, by virtue of which it can be held to be effective as a release of either the contractual obligations of the insured to plaintiff for the unpaid insurance premiums, or of defendant's liability in tort to the plaintiff for the damage which it sustained by reason of defendant's fraud and deceit. The provisions in the agreement of October 28, 1939, including the recitals, which are pertinent here, are to the effect that whereas plaintiff claims the insured owes plaintiff for

premiums certain amounts totaling at $4,316.79, with interest; whereas the insured claims certain credits leaving an agreed balance owing of $4,142.17, plus an agreed amount of interest; whereas plaintiff had canceled its policy covering the insured and is willing to reinstate it and cancel the aforesaid interest charge upon condition that C. A. Starkweather & Son carry all of certain kinds of insurance with plaintiff; and whereas the insured is agreeable to such arrangement, and its president and manager C. A. Starkweather, who is also substantially interested in C. A. Starkweather & Son, is agreeable to the use of his legitimate influence in accomplishing settlement on such basis; therefore it is agreed by and between plaintiff and the insured as follows: (1) The insured now owes plaintiff $4,142.17 and interest as premium on the policies; (2) plaintiff agrees (a) to reinstate and continue in effect its policy covering the liability of insured under the Workmen's Compensation Act; and (b) to waive interest on the amount owing by the insured; and (c) to accept payment of principal amount of $4,142.17 owing plaintiff by the insured as follows: (A) $200 down forthwith, and (B) the balance of $3,942.17 in monthly instalments of $200 commencing February 1, 1940, and on the first day of each month thereafter; and (d) to accept on November 20, 1939, the October, 1939, earned premium; "provided, and upon the express condition, however," that the insured keep current the payment of its workmen's compensation insurance policy premiums earned after October 1, 1939, and upon the further express condition that C. A. Starkweather & Son place and carry with plaintiff certain of their other kinds of insurance from and after the expiration dates of their present policies covering such risks; and—

"It is agreed further that upon the failure of performance or continued performance of either or any of such conditions, or upon failure to make prompt payment of any sum when and as due hereunder, then" plaintiff "may terminate this

settlement by notice in writing to" the insured "and thereupon the entire amount of unpaid principal, with the amount of interest computed to October 1st, 1939, as above set forth, added thereto, shall immediately become due and payable from" the insured to plaintiff.

By and under those provisions the plaintiff agreed merely to waive the interest on the insured's contractual obligation of $4,142.17 then owing to plaintiff for the premiums, and to accept payment thereof in instalments specified in the agreement, "provided, and upon the express condition" that the insured keep current the payment of certain of its workmen's compensation policy premiums earned after October 1, 1939, and that C. A. Starkweather & Son place and carry certain of its insurance business with plaintiff. Because the insured failed to pay the instalment which the agreement required it to pay on February 1, 1940, the plaintiff was entitled, under the express provisions and conditions thereof, to terminate the entire agreement. It appears to have been duly terminated by plaintiff under those provisions on February 2, 1940; and thereupon, under and in accordance with the express provision in the agreement the insured's existing contractual obligation for "the entire amount of unpaid principal, with the amount of interest computed to October 1st, 1939," added thereto, remained due and payable immediately to plaintiff. As there never was an effective release of the insured from its indebtedness to plaintiff, there is no basis for defendant's contention that a release of the insured operated also as a release of the defendant from his liability in tort to plaintiff.

It follows that the order denying defendant's motion for summary judgment must be affirmed.

*By the Court.*—Order affirmed.