M. V. SAUNDERS, Appellant, v. L. A. WELLS and JAMES B. MORTON.

**Deeds:** CONSPIRACY TO DEFRAUD: EVIDENCE. Evidence in an action to cancel a deed, on the theory that it was obtained through a conspiracy to defraud the grantor, is reviewed and held insufficient to establish conspiracy.

**Trusts:** EVIDENCE. In an action seeking damages for the conveyance of alleged trust property the evidence is held insufficient to show that the grantor held the same in trust.

**Trial in equity:** TRANSFER TO LAW DOCKET. After the evidence has been taken in the form of depositions for the purpose of submitting an action asking equitable relief, and at the instance of the plaintiff, much of which could not be used in that form in a law action, refusal to transfer the cause to the law docket for trial is proper.

*Appeal from Jasper District Court.*— HON. BYRON W. PRESTON, Judge.

FRIDAY, JUNE 7, 1907.

ACTION in equity, in which plaintiff asked cancellation of a deed to real property, and in the event that the property was found to have passed to an innocent purchaser, so that cancellation could not be equitably granted, then that he have damages against the defendants for the value of said property. There was a decree for defendants, from which plaintiff appeals.— *Affirmed*.

*Ryan, Ryan & Ryan,* for appellant.

*C. O. McLain,* for appellees.

McCLAIN, J.— The facts about which there is no substantial dispute in the evidence may be sufficiently stated as follows: In the summer of 1902, plaintiff, who was engaged in business in Newton, having formerly owned and for many years lived upon a farm of considerable size in the same county, was solicited by the defendant Wells, who was the agent for the sale of lands in Arkansas, to go to the latter State to look at certain lands, with a view of exchanging property of plaintiffs for land in that State. Wells was a young lawyer, who had on one occasion transacted one item of law business for the plaintiff. About the same time, defendant Morton was similarly solicited by Wells to visit Arkansas for the same purpose, and arranged to make the trip; and plaintiff, partly influenced by the fact that Morton, who was also a merchant in the same town, was going, consented to become one of the party of three, consisting of Wells, Morton, and himself, who went in October to inspect lands held for sale by one Price, as agent. Price met the party in Arkansas, and showed them various tracts of land, and negotiated an exchange of a four hundred and eighty-acre tract to plaintiff for two lots in Newton, valued, with the buildings thereon, at $7,000, certain agricultural implements valued at about $1,000, and the notes of the plaintiff to the amount of about $4,000; the Arkansas land being valued at

$25 an acre, to which was added the commission of $1 per acre, which was to go to Wells. Before the exchange was fully completed by the furnishing of an abstract by Price showing the Arkansas land to be free from incumbrances, plaintiff deeded his lots to Wells, at Price's direction, and Wells conveyed them to Morton, and Morton conveyed to an innocent purchaser. Subsequently, in February, 1903, Saunders went to Arkansas, without the knowledge of Wells or Morton, and made a new arrangement with Price, by which he reconveyed the Arkansas land for other property, and secured the surrender of his notes; and immediately on his return he commenced this action, asking different relief from that prayed for in his present petition, but making the allegations of fraud and conspiracy substantially in the present form.

The wrongful acts on the part of defendants, which are insisted upon by plaintiff, include substantially an abuse by the defendants of confidence reposed in them by plaintiff, a conspiracy between defendants and Price, as against plaintiff, to defraud him, by putting an inflated price on the Arkanses land, and a breach of trust in putting the title to plaintiff's lots beyond his reach by conveying to an innocent purchaser; and the facts which are relied upon as tending to show injury to the plaintiff are the excessive value at which plaintiff was induced to take the Arkansas land, and the conveyance by Wells, through Morton, to the innocent purchaser, of plaintiff's lots at a valuation greatly exceeding that at which Wells took the lots from Price.

I.   As the gravamen of plaintiff's charges against these defendants is conspiracy, it will be necessary to look into the evidence more fully to see whether such a charge is made out.

1. DEEDS: conspiracy to defraud: evidence.

Conspiracy must often be proven by showing a number of independent acts of the different parties charged to have been engaged in it, tending to show a common illegal purpose, and such acts, taken together, may be sufficient, although no one of them in

itself, without proof of an unlawful combination, would be sufficient to constitute a legal wrong. But, on the other hand, mere coincidence of acts of different parties in some way connected with a transaction resulting in injury to the complainant is not sufficient to establish a conspiracy and render the parties who participate in such transaction liable for the injury resulting to the complainant. We must therefore consider the relations of the parties, and their acts as proven, to see whether a wrongful conspiracy resulting in injury to plaintiff is made out. From the first it was well understood by all the parties that Wells was the representative of Price in endeavoring to secure plaintiff and Morton to go to Arkansas to look at lands, and we are unable to see, therefore, that there was any relation between plaintiff and Wells justifying plaintiff in assuming that Wells would act in plaintiff's interest, or that Wells would be responsible for any loss which plaintiff might suffer. No misrepresentations on the part of Wells are shown, and we fail to find the slightest evidence of any wrong on Wells' part, or any fraudulent purpose in the original negotiations. The relations of Wells to the subsequent conveyance of plaintiff's lots will be considered in a separate division of the opinion.

As to Morton, he was, so far as plaintiff knew or had reason to suppose, a fellow prospective purchaser, and plaintiff was not justified in relying upon anything that he said or did; and, so far as the original transaction is concerned, Morton is in no way involved, unless with the purpose of carrying out a conspiracy he said or did something in Arkansas with fraudulent purpose to injure the plaintiff. All that he said and did, so far as the evidence for plaintiff tends to show, was to advise plaintiff to consummate the deal on terms somewhat more advantageous to plaintiff than those which he finally secured, and to induce plaintiff to believe that he (Morton) was negotiating for the purchase of another tract of land, through Price's agency, inferior in quality to the land which plaintiff secured, and at a higher price per

acre. Plaintiff testifies to an affirmative act of Morton in ostensibly delivering to Wells for Price a check by way of advance payment on the purchase which he was contemplating; but the evidence so strongly preponderates against plaintiff as to this specific act that we cannot assume it to have been proven. So far as the evidence is satisfactory, it only tends to show that Morton represented himself to be negotiating for the purchase of another tract, and while it is insisted that Morton is shown to have been so far without resources to carry out such prospective purchase that the representation must be assumed to have been fraudulent, we feel that we are not justified in drawing any such inference. Men frequently contemplate and take steps in negotiations which they cannot reasonably be supposed to be able to carry through. We fail to find that Morton made any representations to plaintiff on which he was justified in placing reliance, or that he was a party to any conspiracy to plaintiff's injury, unless his subsequent relations to the transfer of plaintiff's lots furnished ground for such an inference.

With reference to Price, the only evidence relied on tending to show a conspiracy is the excessive value placed by him on the land traded to plaintiff, and the subsequent recognition of such excessive valuation in transferring to Wells for $2,500 plaintiff's lots, which had been estimated in the exchange at $7,000. The mere fact of trading his land to plaintiff at an excessive valuation would not constitute fraud, neither would it in itself tend very strongly to prove a conspiracy.

The gist of the plaintiff's case is that Wells induced Price to put an excessive value on his land, on the theory that plaintiff had placed a like excessive valuation on his lots in exchange, and then procured plaintiff's lots from Price at a valuation much below what they were really worth, and the measure of recovery which plaintiff insists upon as against Wells and Morton is substantially the difference between what Wells took these lots for from Price, and what they

were soon after sold for by Morton to the innocent purchaser; it appearing that Wells took them for about $2,500, and that Morton sold them for $6,900. With reference to these valuations, it is to be observed that the value of plaintiff's lots depended largely on the use to which the purchaser desired to put them, as the buildings had no established rental value either for residence or business purposes. These lots were finally sold to one who was already in the occupancy of them for a specific purpose to which they appear to have been adapted. Wells purchased from one who was not in a situation to make any use of the property nor to look after it, and part of the consideration was his commission, which was immediately due from Price. We are not greatly impressed with the difference in these two valuations as tending to show a conspiracy. But one fact disclosed by the evidence without substantial conflict destroys any significance, with reference to an original conspiracy, of the subsequent transactions relating to plaintiff's lots. While plaintiff testifies that his deed to these lots to Wells was executed and delivered in Arkansas as a part of the original trade, he admits that the understanding between the parties was that Wells was to hold title to the lots for Price, as a convenient means of effecting a subsequent sale by Price to any person to whom he might be able to dispose of them. We are not satisfied, under the evidence, that any deed was delivered from plaintiff to Wells in Arkansas for the use of Price, or for any other purpose. The deed appears on its face to have been acknowledged by plaintiff and his wife in Newton, after plaintiff's return, and the preponderance of the evidence is that plaintiff's deed to Wells was not executed until after his return. However this may be, it is clearly shown that Wells did not become the purchaser of the plaintiff's lots until after the parties had separated in Arkansas, and the terms of the trade between plaintiff and Price had been fully determined upon. The fact is established without substantial dispute that Wells became the owner of plaintiff's lots at Price's solicitation; a part

of the consideration being the commission due from Price to Wells. There is no connection, therefore, as tending to show a conspiracy between the procurement of title to plaintiff's lots by Wells and the original transaction in Arkansas.

On the whole evidence, were there nothing else involved in the case than the question of conspiracy, we should be fully satisfied that plaintiff fails to make out the conspiracy charged, and is entitled to recover no damages from defendants on account thereof. On this question the subsequent conduct of plaintiff is almost conclusive. Before he had finally consummated his trade with Price — that is, before Price had carried out the terms of the contract on his part by furnishing an abstract to the Arkansas land, so as to become entitled under plaintiff's theory to a deed to plaintiff's lots — plaintiff executed his deed to Wells, was advised by the recording of that instrument and another conveyance by Wells to Morton of the fact that Wells was treating the property as his own, and assisted Morton in finding a purchaser for the lots, to whom plaintiff was bound to assume that Morton would convey them without possibility of subsequent recourse, so far as the lots were concerned on plaintiff's part, and then, without the knowledge of Wells and Morton, who are now sought to be charged with the damages resulting from any wrong on the part of Price, he entered into a new arrangement with Price, reconveying to him the Arkansas land in exchange for other property, and securing the surrender of his purchase money notes. This last transaction was, as already indicated, on a subsequent visit to Price, after plaintiff had had the fullest opportunity to know whether or not he had been defrauded. If plaintiff desired to hold defendants responsible for any conspiracy or fraud to which they had been parties, he should have rescinded the transaction on the discovery of the fraud, and not without their knowledge placed it beyond his power to secure a redress, which would have been substantially effectual as against Price, a party to the conspiracy.

II. Aside from conspiracy, the plaintiff alleges a breach of trust on the part of defendant Wells, in conveying the Newton lots so as to put them beyond plaintiff's reach, charging that the conveyance to Wells was understood to be in trust to hold until Price should furnish the abstract to the Arkansas land. There is a conflict in the evidence as to whether anything was said, at the time plaintiff made this conveyance, which would impose any trust upon Wells. As already indicated, Wells had assumed no obligations to plaintiff prior to this conveyance, and in taking the title to this property acted for himself alone. Aside from the improbability that plaintiff would put the title to his property in one adversely interested to be held in trust for him, the claim of plaintiff is negatived by his own subsequent conduct. Notwithstanding the conveyance by Wells to Morton, who, according to plaintiff's theory, was charged with knowledge of the breach of faith on the part of Wells, he assisted Morton in transferring the property to an innocent purchaser, and at no time, until after this conveyance by Morton was effected, did plaintiff intimate that Wells had not a perfect right to convey in his own interest, and regardless of any obligation to plaintiff. If plaintiff had thought there was any trust obligation on the part of Wells and Morton, he might easily have provided that the proceeds be held for his benefit, or that the purchaser take subject to the trust. The whole transaction indicates that the theory of a trust was not conceived in plaintiff's mind until after the transactions by which the property passed into the hands of an innocent purchaser had been fully consummated.

III. Several successive substituted petitions, with various amendments thereto, were filed by plaintiff, in each of which equitable relief was asked; but finally, on the 23d of September, 1904, plaintiff filed a substituted petition, in which the only relief demanded was a judgment for damages. On the 30th of

*2. TRUSTS: evidence.*

*3. TRIAL IN EQUITY: transfer to law docket.*

the same month plaintiff moved to transfer the case to the law docket, and on the 5th of October the defendants filed their motion to strike the last substituted petition from the files. The court acted on these two motions together, sustaining the defendants' motion to strike plaintiff's substituted petition, and overruling plaintiff's motion to transfer the case to the law docket; and plaintiff excepted to each of these rulings. No complaint is made by appellant of the action of the court in striking his substituted petition from the files, and his complaint of the ruling on his motion to transfer the case to the law docket is without merit. When the substituted petition was stricken from the files, the case stood for trial on plaintiff's last previous amended and substituted petition, which asked equitable relief. There can be no doubt, however, as to the propriety of the judge's ruling on the motion to strike. When plaintiff's substituted petition asking only relief at law was filed, the greater part of the testimony on both sides had been taken by depositions, many of which could not have been used in a trial at law, and plaintiff had no right, after permitting the case to proceed until after the taking of the evidence for a determination of the case in equity, to insist upon the case being transferred to the law docket for trial, as such transfer on the eve of the trial would have entitled the defendants to a continuance. *Hartwig v. Iles,* 131 Iowa, 501.

Many of the depositions had been taken in Arkansas, at plaintiff's instance, involving the presence there of defendant's attorney, and defendants had also taken depositions in that State on their own behalf. Defendants would have had a right to continuance to procure the personal presence of their witnesses from outside the State, if they so desired, and the court was not bound to protract the litigation in order to give plaintiff the opportunity of securing a trial at law. As a matter of fact, although plaintiff had from the beginning been demanding equitable relief, there was no equitable relief available to him when his action was first instituted, nor at

any time thereafter, for when his first petition was filed he had parted with the Arkansas land, and secured the return of his notes, and his own lots had been transferred to an innocent purchaser. There is nothing in the evidence to indicate that the machinery was ever out of his possession, and, as we understand the record, the title thereto had revested in him as a part of the transaction in which the Arkansas land had been disposed of. If plaintiff desired to have his case tried as a law action, he might have confined himself to a prayer for relief at law as safely at the time when his first petition was filed in March, 1903, as when he filed his substituted petition in September, 1904. Even if we could find error in refusing to grant plaintiff a trial to a jury, we should hold it to be error without prejudice, for, as we view the evidence, it would not sustain a verdict in plaintiff's favor had there been a trial to a jury.

We reach the conclusion that the decree of the trial court is correct, and it is *affirmed*.