HENRY W. MOWRY, Appellee, v. CHARLES REINKING et al., Appellants.

**CONSPIRACY:** Evidence—Acts Antedating Conspiracy. In an action
1   for damages for conspiracy to libel plaintiff and to defame his character, growing out of the World War activities, evidence is wholly inadmissible which tends to show that, long *prior* to the alleged conspiracy, the defendants and the community generally in which they lived sought to perpetuate and did perpetuate the military habits, customs, and practices of the foreign people and government of which the defendants were formerly a part.

**CONSPIRACY:** Evidence—Incompetent Declarations. Declarations of
2   alleged coconspirators evincing hostility toward the plaintiff in an action for conspiracy to libel are wholly inadmissible when it cannot be said that they were made in furtherance of the alleged conspiracy. Especially are declarations evincing hostility to plaintiff inadmissible when made by persons who are not party defendants nor shown to be conspirators, and whose declarations spring solely from personal hostility wholly disconnected with the conspiracy in question.

**CONSPIRACY:** Malice—Evidence to Rebut. Competent testimony to
3   rebut malice on the part of an alleged conspirator is manifestly admissible.

**TRIAL:** Instructions—Copying Involved Pleadings. Issues susceptible
4   of brief condensation should not be presented to the jury through the easy expedient of copying long, involved, and complicated pleadings.

CONSPIRACY: Damages—Actual and Exemplary—Mitigation. In an action for libel and defamation of character, the court should clearly differentiate between the purpose and effect of evidence (1) tending to show a good-faith belief in the truth of the charges in question and (2) tending to show the actual truth of such charges.

CONSPIRACY: Verdict—Excessiveness. Record reviewed; and held that a verdict of $40,000 for libel and defamation of character was excessive and the result of passion and prejudice.

Headnote 1:  12 C. J. p. 635.  Headnote 2:  12 C. J. p. 633 (Anno.) Headnote 3:  12 C. J. p. 633 (Anno.)  Headnote 4:  38 Cyc. p. 1611 (Anno.)  Headnote 5:  37 C. J. p. 111 (Anno.)  Headnote 6:  37 C. J. pp. 128, 129.

Headnote 1:  5 R. C. L. 1104.  Headnote 4:  14 R. C. L. 728.

*Appeal from Jones District Court.*—ATHERTON B. CLARK, Judge.

APRIL 5, 1927.

Action at law, to recover damages for an alleged conspiracy to libel, defame, and otherwise injure the reputation and business and social standing of the plaintiff. Verdict and judgment for plaintiff, and the defendants appeal.—*Reversed.*

*Charles M. Dutcher, Don Barnes, Otto L. Schluter,* and *Park Chamberlain,* for appellants.

*J. C. France, C. J. Lynch,* and *Johnson & Donnelly,* for appellee.

STEVENS, J.—I. The conclusion reached in this case necessitates a somewhat extended statement of the issues, particularly of the allegations of the petition and of the evidence offered on behalf of appellee in chief.

The petition charged that appellants, on or about the —— day of May, 1921, "wrongfully, unlawfully, wickedly, and maliciously combined, confederated, and conspired together, each aiding, assisting, and abetting the other, to libel, defame, injure, and destroy the plaintiff in his standing as a citizen and member of the community in which he then lived, and to cause to be

withdrawn from him the confidence and association of his neighbors and associates.'' It was further alleged in the petition that a large proportion of the population of Lowden and vicinity, which was the residence of the parties hereto, is of German birth and parentage, and that, prior to the entry of the United States into the World War, the people had continued German customs, honored German leaders, perpetuated German traditions and institutions, and spoken the German language almost exclusively; that, upon the entry of the United States into the war, the sympathy of the community continued to be largely in favor of Germany; that appellee, by his active and vigorous participation in the activities of the government during the war, incurred the enmity of appellants; that, prior to the war, and from the 10th to the 15th of June of each year, a celebration called the Lowden Deutscher Krieger Verein, or Kriegerfest, was held in Lowden, in which German veterans of the Franco-Prussian war marched in street parades, carrying a German flag and other military German insignia and emblems; that such celebrations were distinctively German in character, and for the purpose of perpetuating German traditions; that, in May, 1921, the local post of the American Legion, the membership of which is largely German, sought to hold a celebration at Lowden on the 11th day of June; that, prior to May 9th, appellee was the mayor of said town; that, as such officer, he declined to issue a permit to the Legion Post to hold said celebration; and that, to avoid trouble, on May 9th, appellee resigned his office as mayor, and one Mensing was appointed as his successor; that thereafter, the city council yielded to the importunities of the community to revive the Kriegerfest, with all its customs, spirit, and tradition, and granted a permit to the post to hold said celebration. The petition further charged that, in pursuance of the alleged conspiracy, a meeting of the citizens of the community was called and held on the evening of May 8th; that resolutions libeling appellee were adopted at said meeting, which was attended by more than 500 people; that same, together with other libelous and defamatory articles, were published of and concerning appellee, on various dates, in the Lowden News, a local publication. Copies of said resolution and others claimed to have been published in furtherance of the alleged conspiracy were attached as exhibits to the petition. In one of the articles

published in the local paper, the following charges against appellee were made:

"Mr. Henry W. Mowry's patriotism had been mixed with a strong percentage of whiskey. If, to suggest one more of more instances, that public which has been deceived by Mr. Henry W. Mowry could have seen that gentleman sprawled, dead drunk, upon a sand pile in a local lumber yard, the sport of small boys, it is somewhat more than likely that their admiration would now be as lukewarm as that of the people here at home who know Mr. Henry W. Mowry for what he is, and not what he poses to be. That is the issue. It will come to light. It will be made public."

A motion to strike a large part of the allegations of the petition was overruled, and the defendants answered. Separate answers were filed by Hoeltje and the remaining defendants who joined in the same answer. There was a general denial by all of the defendants of the allegations of the petition, together with pleas in mitigation of damages. The defendant Hoeltje also pleaded the truth of the charges of intoxication quoted above. All of the defendants further alleged that the resolutions adopted by the mass meeting at the city hall on the evening of June 8th were "for the purpose of clearing the good name of the citizens of Lowden and vicinity and of the local post of the American Legion from the aspersions that had been cast upon the same by the conduct and statements aforesaid of the plaintiff. That said meeting was actuated by no other motive."

The defendants further alleged that the plaintiff had circulated stories in the community as to the loyalty of the citizens, and had visited other near-by towns and Legion posts, for the purpose of misrepresenting the truth as to the purpose of the proposed celebration of the Legion, of the attitude of the German population as to the war, and the alleged attempted revival of the Kriegerfest and of German customs, traditions, etc. The answers are lengthy, and a further statement of the issues tendered thereby is not necessary to the proper decision of the questions presented for review.

Something like 88 rulings of the court, most of which relate to the admission and exclusion of testimony, are complained of by appellants. We do not deem it necessary to refer specifically

to many of these alleged erroneous rulings, as they may be better disposed of together.

It is the view of counsel for appellee that the assignments of error, particularly those relating to the admission of testimony offered in chief, are insufficient, under the rules of this court, to justify a review thereof. The assignments in each instance include the questions, objections, and answers of the witness, and we think they are fairly sufficient in this form. In any event, as the judgment must be reversed upon other grounds, in view of a possible retrial of the case, we feel it incumbent upon the court to review these assignments and to point out what seems to us an erroneous theory upon which much of the testimony complained of was admitted.

Shortly prior to June 8, 1921, eight of the appellants, with others, as a duly appointed committee, met at the American Trust & Savings Bank of Lowden, and a notice signed by them and others was prepared and sent out to the community, calling a mass meeting at the city hall on the evening of June 8th, "to [as stated therein] deliberate about the best efficient way in which to stop further disturbances of the peace of our community." This notice was published in the Lowden News. The article, of which the notice was a part, included a quotation from the Evening Gazette of Cedar Rapids, in which reference is made to the refusal of the commander of the Legion to sanction the celebration on June 11th, and also to the notoriety obtained by the Lowden community during the war, and otherwise calling attention to the proposed Legion celebration and former German celebrations. A mass meeting, attended by more than 500 people, including appellee, was held at the city hall on the evening of June 8th, in pursuance of the foregoing notice. The local pastor of a German church served as chairman of the meeting. Resolutions previously prepared, which charged appellee with having slandered and maligned the community, causing various newspapers to publish articles reflecting upon the loyalty of the citizens and the good name of Lowden and its community, were unanimously adopted. The resolutions are, in part, as follows:

"To stop any further agitation by the above named Henry Mowry and his associates (if such be) we request of them a

satisfactory explanation or apology in writing for their conduct and machinations in this regard, especially for their charges that

"(A)    This community advocated a celebration which commemorates a victory of German arms over the French in the Franco-Prussian War;

"(B)    That such victory annually celebrated by the Lowden community up to the time of the World War, and

"(C)    That the date in June chosen by the Legion Post for their celebration was chosen primarily by the parents and relatives of the American Legion boys and not by the Legion boys themselves."

The resolutions further designated the mayor and other representative citizens of the community, to receive such explanation or apology as appellee would make. Subsequently, the remarks of the chairman of the meeting and the resolutions were published in the local paper. Appellee offered no explanation or apology within the time fixed, and on June 17th, an article declaring the appellee unworthy of the further respect of the community, and otherwise reflecting upon him, was published in the Lowden News, under the caption:

"Mowry Loses Lowden Respect.    H. W. Mowry, By Failing to Offer Explanation or Apology for Libelous Accusations, Loses Respect of Community. - - - Silence Admission of Guilt. - - - Failure to Offer Apology or Alternative Explanation May be Interpreted as Inability to Face Citizens' Accusations."

Testimony was also introduced, tending to show that former friends thereafter ignored and refused to speak to him; that he was considerably ostracized by the community; and that efforts were made to induce business men to refuse him admission to their places of business. The record does not contain the names of those who signed the resolutions adopted at the mass meeting on the evening of June 8th, but it is shown that more than 500 names were signed thereto.

From 85 to 90 per cent of the population of Lowden and vicinity is shown by the evidence to be of German birth or antecedents. Appellee and numerous other witnesses were permitted, over the objections of appellants, to testify, in substance, that, prior to the war, the German language was generally used in the community; that the sympathy of the German population was with Germany during the war; that many of appellants took

no part in war work or any of its activities; that appellant Licht, although elected president of the Red Cross, did not attend the meetings; that government representatives were called to the community during the war on various occasions on account of pro-German sentiment; that a large number of citizens formerly residing in the community were Prussian ex-soldiers of the Franco-Prussian war; that, many years prior to the World War with Germany, about 1892, these ex-soldiers formed a secret society, known as the Deutsch Krieger Verein, generally referred to in the community as the Kriegerfest; and that, in June of each year for several years, and until 1909, they held a celebration at Lowden, which included a street parade, speeches, and other forms of entertainment; that, during the street parade, the members of the society wore regalia of the German army, carried German flags, and otherwise imitated the German soldiery. The speeches were usually made in German, and consisted largely of extolling the efficiency and superiority of Germany as a government, of the German people, and of German soldiers. German songs were sung at the celebration, and in other ways German traditions, customs, and practices were sought to be perpetuated and maintained. To illustrate the nature of the parades and the regalia worn, photographs were introduced in evidence. Two of the photographs introduced were of parades; and one, of a group of members of the German society, with others taken many years before the incidents complained of, shows a number of men, dressed in uniform, with helmets, and a woman with headgear displaying two eagles, and otherwise supposed to represent the regalia of the German army. The latter photograph, according to the testimony of appellants, was taken in the fall, and the regalia displayed were obtained from Davenport, for a purpose in no wise connected with the June celebrations. Testimony was also introduced, tending to show that the so-called Kriegerfest was organized for the purpose of celebrating the victory of Germany over France in the Franco-Prussian war; that the purpose and intention of the community, in celebrating on June 11, 1921, were to revive the memory and traditions of the Kriegerfest, to perpetuate the spirit of that order, and to otherwise extol German superiority. Evidence was also introduced as to conversations and negotiations between appellee and members of the Legion Post, relative to holding the celebration on June 11th,

and that negotiations of a similar character were had in 1920; but that no celebration was held in June of that year.

To set out all of the evidence to which objections were interposed would unduly extend this opinion. The foregoing statement is sufficient to indicate the general nature of the evidence of which appellants complain, and of the theory upon which the case was tried and the evidence admitted.

Before passing upon the questions presented by the admission of the foregoing testimony, let us consider briefly the nature and scope of a civil action for damages based upon an alleged con-

1. CONSPIRACY: evidence: acts antedating conspiracy. spiracy. The court below correctly instructed the jury that a conspiracy is a combination of two or more persons by some concerted action, to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful. The conspiracy charged in the petition is "to libel, defame, injure, and destroy the plaintiff in his standing as a citizen and member of the community in which he then lived, and to cause to be withdrawn from him the confidence and association of his neighbors and associates." The gist of the action is damages. The court, in its instructions to the jury, said that:

"In considering further the question of actual damages sustained by the plaintiff, if any, you may take into consideration the mental anguish, grief, and suffering sustained by the plaintiff, if any, and the deprivation of the plaintiff of public confidence and social intercourse, if any."

The allegations of the petition are specific, and the fact and purpose of the conspiracy are clearly and definitely stated. The burden was upon appellee to prove all of the elements necessary to his recovery. To be relevant and competent, the evidence offered must tend to establish some one or more of these elements. To this end, the resolutions adopted and signed by appellants, the prior negotiations at the bank, the sending out and publication of notices calling a mass meeting at the city hall on the evening of June 8th, and all that was said and done at that meeting tending to prove a conspiracy on the part of appellants, were admissible. It is elementary that a conspiracy may be proven by either direct or circumstantial evidence. Upon prima-facie proof of a conspiracy, all that was thereafter said and done by each of the said coconspirators in furtherance of such conspiracy was

admissible in evidence, and binding upon all of the conspirators, parties to this action. Abbott's Trial Brief (1889 Ed.), Section 543 et seq.; *Work Bros. & Co. v. McCoy,* 87 Iowa 217; *State v. Caine,* 134 Iowa 147; *Saunders v. Wells,* 135 Iowa 11; *Funck v. Farmers Elevator Co.,* 142 Iowa 621; *Wiggins v. Leonard,* 9 Iowa 194; *Miller v. Dayton,* 57 Iowa 423; *Connecticut Mut. Life Ins. Co. v. Hillmon,* 188 U. S. 208 (47 L. Ed. 446).

The theory upon which the declarations of one conspirator not made in the presence of his coconspirators are admissible is that it is a part of the *res gestae.* *Taylor County v. Standley,* 79 Iowa 666; Abbott's Trial Brief, supra; *State v. Grant,* 86 Iowa 216. To be a part of the *res gestae,* the statements and declarations made by one conspirator in the absence of his coconspirator must have been made in pursuance of the conspiracy, and prior to its consummation. *State v. Grant,* supra; *Taylor County v. Standley,* supra; *State v. Weaver,* 57 Iowa 730; and cases cited supra.

Likewise, declarations made prior to the formation of the conspiracy cannot be a part of the *res gestae,* and therefore are inadmissible as such. The order of the introduction of evidence is confided largely to the discretion of the court. Doubtless, however, the better rule is to first require prima-facie proof of the conspiracy to be made. Appellee alleged, and testimony was admissible to show, malice on the part of the appellants: that is, after a prima-facie case of conspiracy was made out. Necessarily, considerable latitude must be allowed to the plaintiff in proving malice, as well as in proving the conspiracy. Several articles claimed to be libelous were published in the Lowden News, of which the appellant Hoeltje was editor, relative to appellee and his acts and conduct touching the proposed celebration of the Legion Post. All of these articles were received in evidence. The court instructed the jury that at least two of these publications were libelous per se. This being true, malice and damages were presumed. *Fey v. King,* 194 Iowa 835.

Upon the application of the foregoing rules to the testimony referred to, was any or all of it admissible? Surely, testimony of matters occurring long anterior to May, 1921, of the alleged secret society, of the customs, language, and traditions of the community, of their attitude during the World War toward Germany, the allies, or war activities, could tend in no way to

establish either the alleged conspiracy or damages recoverable by appellee. The damages to appellee for which recovery was sought were of a purely personal character, and such as resulted from the overt acts done in pursuance of the alleged conspiracy. The overt acts charged were the defaming and libeling of appellee's character, the attempt to destroy his standing in the community, and the withdrawal from him of the respect and confidence of his associates, and other injury to him, socially and financially. Appellee was not entitled to recover damages for anything that occurred prior to the formation of the alleged conspiracy, but only for the doing of some one or more overt acts in pursuance thereof. That is to say, the only damages appellee could recover were such as resulted proximately from the proven overt acts of the conspirators. *Bitzer v. Washburn*, 121 Iowa 462.

Wounded feelings resulting from delinquencies of other citizens of the community, no matter what their character, and injuries to the reputation of the community touching the duties and responsibilities of citizenship, were no part of appellee's cause of action. To what extent evidence should be admitted to explain the alleged libelous publications, if explanation was necessary, was largely within the discretion of the trial court. We are, therefore, of the opinion that the evidence heretofore recited as to matters occurring prior to the alleged conspiracy, and not otherwise disposed of herein, to which objection was interposed, was clearly inadmissible. The burden was upon appellee to prove the conspiracy, some one or more of the overt acts alleged, malice on the part of the conspirators, and the damages suffered.

Evidence of various statements and declarations of some of appellants, and also of other residents of the community,—not, however, parties to this action,—indicating hostility and enmity toward appellee, was admitted. The test of the admissibility of the acts, conduct, and statements of appellants is: Were they said and done by one or more of the conspirators in furtherance of the conspiracy? If not, then they clearly were inadmissible. In this connection, we call attention to the alleged declaration of Dr. Charlton, one of appellants, that appellee had offended him in violation of some professional duty; that one Deke sought to induce the cashier of a bank in Lowden to refuse appellee admission

2. CONSPIRACY: evidence: incompetent declarations.

thereto and to cease associating with him. It is not alleged in the petition that Deke was a conspirator, nor was any evidence introduced on that point. Nothing Dr. Charlton said, nor the enmity, if any, which he assumed toward appellee because of the violation of some obligation believed to be due him professionally was admissible, upon any theory. His declarations of personal enmity were in no way binding upon the remaining defendants. What others said or did in the community to injure appellee was immaterial, unless it was a part of, and said and done in further- ance of, the alleged conspiracy. Manifestly, the testimony of neither Deke nor Charlton, to which we have referred, should have been admitted. Other similar conversations referred to in the evidence should have been excluded, but we shall not point them out. The statement of the rule is sufficient.

The record is voluminous, and much improper testimony was received over the objections of appellants. We have endeavored to point out, as clearly as it is possible to do in a general way, the recognized and well established tests for determining the admissibility of evidence on behalf of the plaintiff in chief in cases of this character, and we shall refrain from further refer- ence thereto in detail. Of course, what is rebuttal must be de- termined by the same rule as in other cases.

II. Appellants sought to introduce testimony to negative the allegations of malice, and in support of their plea in miti- gation of damages. Objections were sustained by the court to much of the offered testimony. That evidence
**3. CONSPIRACY: malice: evidence to rebut.** was admissible on behalf of appellants for the purposes stated is elementary. We conclude that the objections were doubtless sustained to the form of the question, which, in many instances, called for the conclusion of the witness. We shall assume that the rulings here complained of, so far as erroneous, will be avoided upon a retrial of the cause, and shall devote no further discussion to them.

III. The court declined to give numerous instructions re- quested by appellants. No proper exceptions were preserved to these rulings. Section 11495, Code of 1924; *Anthony v. O'Brien*, 188 Iowa 802. They cannot, therefore, be reviewed.

IV. Many exceptions to the court's instructions are argued by counsel, but we deem it necessary to discuss but a few there- of. The statement of the issues is criticized. The petition was set

4. TRIAL: instruc-     out almost verbatim, and much of the separate
   tions: copying      answers was copied into the instructions. The
   involved plead-
   ings.               pleadings, particularly the answers, were very
lengthy, involving much repetition and detail. It is sometimes
permissible for the court to copy the pleadings, in stating the
issues to the jury, but this practice should be avoided whenever
possible. The purpose of stating the issues at all is to enlighten
the jury as to what the controversy is about, and to enable the
jurors to apply the evidence thereto and to more clearly com-
prehend and understand the law as stated. The statement of the
issues in this case is subject to the criticism that the recital of
the pleadings was as likely to confuse as to enlighten the jury.
A brief, accurate statement of the issues in the court's own
language is always preferable to the statement thereof in the
exact language of the pleadings.

It is also asserted that the court failed to submit the de-
fenses at all as to one appellant, and that other defenses were
omitted from the statement made to the jury. Complaints of
this character will, of course, be avoided upon a retrial of the
cause, and need not be further considered.

It is the rule in this state that the good-faith belief in the
truth of the matters published may be shown in mitigation of
exemplary damages. *Brandt v. Story,* 161 Iowa 451; *Cain v.*

5. CONSPIRACY:      *Osler,* 168 Iowa 59. It is also the rule that the
   damages: actual   defendant in a libel suit may plead and prove
   and exemplary:
   mitigation.       the truth of the matters published as a defense,
and may also show, in mitigation of damages, that the character
and reputation of the plaintiff as to the matters in issue were
bad, prior to the publication of the alleged libel. *Cain v. Osler,*
supra; *Wallace v. Homestead Co.,* 117 Iowa 348; *Bascom v.*
*Hoffman,* 199 Iowa 941.

The defendants, in addition to the matters already stated,
set up, in their respective answers, that appellee, by his conduct
and his misrepresentations of the attitude and loyalty of the
community, had, prior to the acts complained of, lost the respect
and confidence thereof, and offered evidence thereof in mitiga-
tion of damages. The court's instructions were somewhat con-
fusing as to the purpose and effect of evidence in mitigation of
damages. Paragraph No. 7 was devoted to the issue of exem-
plary damages. In this instruction the court said:

"And you are instructed that you are to consider mitigating circumstances only as bearing upon the allowance of exemplary damages."

In Paragraph No. 13, the court dealt with the matters pleaded by Hoeltje in his separate answer, in mitigation of damages. In this instruction the court said:

"But if you find that, prior to the time of the publication of the articles complained of, plaintiff had a reputation of being guilty of the matters and things charged in said articles, and said reputation was not caused by the publications and statements of defendants, then you will take the same into consideration in determining the amount of damages, if any, to which the plaintiff will be entitled; but you will not consider such evidence for any other purpose, and it should be given weight by you only in determining the amount of damages which the plaintiff has suffered, if any."

The language of Paragraph 14 of the court's charge is somewhat involved and not easily understood. We do not deem it necessary to set this instruction out in full, but we call attention to the last sentence thereof, as follows:

"You may, however, consider the evidence offered by said defendants in support of the other allegations of their answer, as set out in the statement of the issues herein, as bearing on the question of the mitigation of damages, in connection with the adoption and publication of the resolutions, plaintiff's Exhibit No. 12; but you will not consider such evidence on the question of mitigation of damages in connection with the other articles charged by plaintiff to have been published by defendants pursuant to the conspiracy, if any, to which your attention has already been directed, as being articles libelous *per se.*"

The reference in the three separate instructions to the scope and effect of evidence in mitigation of damages might easily have confused the jury. There is apparently some conflict therein. Evidence that the defendants in good faith believed the charges contained in the several publications complained of was admissible in mitigation of punitive damages only; but evidence tending to show that appellee, by his acts and conduct, had incurred the ill will of a portion of the community, and had caused its respect to be withdrawn from him prior to the formation of the alleged conspiracy, was admissible in mitigation of

actual damages. We think the instructions at this point misleading and likely to have confused the jury.

V. The jury returned a verdict of $40,000, which was $10,000 less than the total amount asked in the petition. Appellants contend that the verdict is so grossly excessive as to indicate passion and prejudice on the part of the jury, induced, in part at least, by the alleged misconduct of counsel in argument. As already appears, great latitude was allowed appellee in the introduction of testimony relating to immaterial and irrelevant matters. Much of this testimony was of a character well calculated to arouse resentment on the part of the jurors. The instructions limited recovery of actual damages to "such sum as will reasonably compensate him for the mental anguish, grief, and suffering so sustained, if any, and for the loss of the benefits of public confidence and social intercourse, if any, suffered by him," not to exceed $25,000, the amount asked in the petition. Appellee testified that, subsequent to the adoption of the resolution by the mass meeting, he was ignored by a large part of the population of Lowden and vicinity, of German birth or antecedents; that they refused to speak to him upon the streets; that he suffered loss of appetite, much loss of sleep, and some impairment of his memory, and great humiliation, both on account of the treatment accorded him and also his family. The evidence shows no mistreatment of the members of his family by any of appellants. He does not claim that he was injured in his business, and no personal assaults were made upon him. He admitted that he was addicted to some extent to the use of intoxicating liquors, prior to 1918, and that, upon the occasion referred to in the petition, he was intoxicated, and sat upon a pile of sand in or near a lumberyard. He denied, however, that he was sprawling upon the sand, or that he was ridiculed by boys and others in the community while in that condition. Counsel in argument referred to appellants' attitude during the war, their lack of fidelity to war activities, and their German sympathy, and otherwise charged them with misconduct, if not disloyalty, during that period. Counsel said:

"If you are in Lowden, and you go to Mr. Licht or Rev. Dyck, and say 'Deutschland über alles,' you are all right,—or that in substance."

And again:

"We hold out our arms to these men who come across here, but when they come over here, we don't want them to undertake to put their Prussian laws on American necks,—that will never do."

And again:

"Henry Mowry went out and collected the funds. Did anyone else of these defendants do anything? Not a one."

Other language of similar character was used in argument. Whether, in view of the scope of the testimony admitted, counsel were guilty of misconduct in the respect charged, is not very material. It may well be inferred that the size of the verdict is accounted for, in large measure, by the broad latitude allowed in the introduction and character of the testimony and in argument by counsel. This is particularly true when Paragraphs 10, 11, and 12 of the court's charge to the jury are taken into consideration. These instructions are as follows:

"No. 10. You are instructed that the Lillis-Deerberg Post, American Legion, of Lowden, Iowa, had a right to hold a celebration on June 11, 1921, in said town of Lowden, and it was not unlawful for them to select that date for any celebration which they proposed to put on at that time.

"No. 11. You are instructed that there is no evidence that the sympathy of the defendants, or any of them, during the war or prior thereto, was with the German government, or that it was necessary that vigorous measures be employed to obtain from the defendants, or any of them, proper contributions to the various funds raised in furtherance of war activities and to keep down seditious and disloyal utterances.

"No. 12. You are instructed that there is no evidence that the members of the Lowden American Legion were influenced in the choice of date for their celebration, or in any change of date made by them for their celebration, by any importunities or solicitations of the members of the community who desired to revive the Kriegerfest, with its customs, spirit, and traditions, or that they were influenced by any hope or expectations of receiving the active aid and support of any element of the community who did desire to revive the Kriegerfest, with its customs, spirit, and traditions."

The effect of the foregoing instructions was to practically

eliminate many allegations of the petition, and to withdraw considerable testimony offered by appellee in chief from the consideration of the jury. This was not, however, made plain to the jury. No exception was taken by appellants to these instructions, and attention is called thereto only for the purpose of showing the real issues before the jury for decision.

We think the verdict was excessive, so much so as to require that the same be set aside and a new trial granted. As bearing upon the matters here discussed, see *Henry v. Sioux City & Pac. R. Co.*, 70 Iowa 233; *Wheeler & Wilson Mfg. Co. v. Sterrett*, 94 Iowa 158; *Almon v. Chicago & N. W. R. Co.*, 163 Iowa 449; *Junkin v. Hargrove & Arnold*, 196 Iowa 1387; *Eastman v. Miller*, 113 Iowa 404; *Jensen v. Duvall*, 192 Iowa 960.

We reach the conclusion that appellants did not have a fair trial, and the judgment of the court below is, therefore,—*Reversed.*

All the justices concur.