L. J. STAMBAUGH, Appellant, v. F. A. HAFFA et al., Appellees.

No. 41772.

MARCH 13, 1934.

Geo. C. Claassen, and Mears, Jensen & Gwynne, for appellant.

McCoy & Beecher, for appellee Haffa.

Longley, Ransier & Frank, for appellees Shanks and Hutchison.

Sullivan & Sullivan, for appellees Mr. and Mrs. W. B. Smalling.

STEVENS, J.—On and prior to January 26, 1926, two corporations organized under the laws of Iowa, one the Medical Life Insurance Company and the other the Insurance Loan & Investment Company, had their principal places of business in the city of Waterloo. The officers of the two companies were generally the same and they occupied the same offices. On January 26, 1926, appellant purchased 800 shares of the preferred stock of the investment company at par and for which he paid $8,000 by check on the Grundy County National Bank. On February 3d following, he purchased 400 additional shares, for which he paid $4,000 in the form of a certificate of deposit issued by the Grundy County National Bank of Grundy Center, Iowa. All of the negotiations with appellant for the purchase and sale of the stock were conducted by W. B. Smalling,

an agent of the Medical Life Company engaged in selling life insurance, assisted in part by Londergan, a director.

On February 27, 1926, appellant caused a notice of the rescission of the sale of the aforesaid shares of stock to be served upon the corporation. The reason for rescinding the contract was fraud and deceit alleged to have induced the purchase thereof. All of the negotiations with appellant were conducted by Smalling, except Londergan took some part. Following the notice of the rescission, appellant commenced an action against the corporation, against which judgment was recovered for the amount paid for the stock. The cause of action now before us is prosecuted against the officers and directors of the Investment Company. Briefs and arguments have been filed on behalf of the appellees Haffa, Hutchison, and Shanks.

It is conceded by appellees that the Investment Company was practically, if not wholly, insolvent at the time the certificates of stock were issued to appellant and that the purchase was induced by fraud and deceit.

The petition herein charges all of the defendants with having conspired and confederated together to cheat and defraud appellant. With the concession on the part of appellees that the corporation was in a bad financial condition and that appellant was induced to purchase the stock by the fraud and deceit of Smalling, the scope of our difficulty is materially reduced. At the conclusion of appellant's case, a verdict was, on motion, directed by the court in favor of all of the defendants, except Londergan, against whom judgment was entered. He has not appealed.

The vital and decisive question to be determined by this court is whether there was sufficient evidence involving the participation of appellees in the admitted fraud to justify submission of that issue to the jury. A conspiracy is a combination of two or more persons by some concerted action to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means. Mowry v. Reinking, 203 Iowa 628, 213 N. W. 274; Smead v. Stearns, 173 Iowa 174, 155 N. W. 307, Ann. Cas. 1918C, 745; Dickson v. Young, 202 Iowa 378, 210 N. W. 452; Hall v. Swanson, 201 Iowa 134, 206 N. W. 671.

Direct proof of the alleged conspiracy is not necessary. It may be established by circumstantial evidence. Mowry v. Reinking,

supra; Boom v. Boom, 206 Iowa 70, 220 N. W. 17; Smead v. Stearns, supra.

Nor, is proof of a prior specific agreement to perpetrate a fraud or work some injury to another necessary to establish a conspiracy. A conspiracy may not, however, be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action. Hall v. Swanson, supra.

The record in this case is devoid of direct evidence tending to prove the alleged conspiracy. This fact is not, however, fatal to appellant's cause of action. If concert of action on the part of appellees, having for its purpose to cheat and defraud appellant, is shown, that is sufficient and a prima facie case is established. A director, officer, or agent of a corporation is liable in damages for injuries suffered by third persons because of his torts, regardless of whether he acted on his own behalf or in concert with others; but an officer or director of a corporation is not liable for its torts where he has not participated therein and had not, with some knowledge of the fraudulent purpose, consented thereto or participated therein. He is not liable merely because he is an officer or director of the corporation. Walker v. Howell, 209 Iowa 823, 226 N. W. 85; Boddy v. Henry, 113 Iowa 462, 85 N. W. 771, 53 L. R. A. 769; Barry v. Legler (C. C. A.) 39 F. (2d) 297; Cohen v. Maus, 297 Pa. 454, 147 A. 103; Fletcher Cyc. Corp., sec. 1137.

With the foregoing well settled rules of law in mind, we proceed now to an analysis of the evidence. This, because of the numerous collateral and incidental facts scattered here and there through a voluminous record, in preparation presented a difficult task. We find no evidence in the record tending directly to prove that any one of appellees who filed briefs in this court in any way conspired together, or by concerted action did anything fraudulent to induce appellant to purchase the shares of stock involved. Does the record disclose such facts and circumstances tending to that end as would have justified a jury in returning a verdict against them in appellant's favor?

Appellant resided on a farm in Grundy county. Smalling had previously sold him policies of insurance in the Medical Life. On the 25th of January, he went to the home of appellant ostensibly for the purpose of selling him some additional life insurance. Failing in this, he proposed the purchase of some shares of stock in the Insurance Investment Company. The relationship between the two

corporations was, as already indicated, close. The Investment Company was organized with authority to buy and sell real estate, to maintain agencies for the sale of fire insurance, and to buy and sell securities. Its business was, however, largely confined to the sale of life insurance in the Medical Life Insurance Company, under contracts had therewith, for a share of the premiums paid on policies and renewals. Smalling does not appear to have been a stockholder in either of the aforesaid corporations. After some negotiations at the home of appellant on January 25th, Smalling returned on the following day, in company with his wife, and induced appellant and his wife to visit the offices of the company in Waterloo. While in Waterloo, they were shown through the offices of the company and appellant was introduced to appellee Shanks but had no conversation with him about the purchase of stock. The negotiations for the sale of the stock were completed, and two certificates, signed by appellee Hutchison, as president, and the assistant secretary, were delivered to appellant by Smalling. It is not claimed that Shanks on that occasion made any oral statements or representations of any kind to appellant. A recitation of the representations made by Smalling is unnecessary, as appellees concede that they were both false and fraudulent. On February 3d, Smalling again visited appellant at his home. On this occasion, appellant went with Smalling to Waterloo, where the second sale, as already stated, was consummated. Before departing, 400 shares of stock were issued to appellant and paid for by him with a certificate of deposit issued by the Grundy County National Bank. Appellant testified that it was his agreement with Smalling that a seven per cent dividend on the stock for 1926 was to be paid to him in June. Shanks discovered that the certificate of stock so stated and said that there was a mistake. Shanks took the certificate, returned to his office, where the date for the payment of the supposed dividend was changed to 1927.

Appellant also testified that on the occasion of Smalling's first visit to his home, he showed him a prospectus issued by the Investment company and signed by appellees and others. The record does not disclose when the prospectus was published. It contains no representations as to the financial responsibility of the company. It is devoted to a detailed description of the business of the corporation. Appellant also testifies that Smalling exhibited to him some

letters written by Shanks concerning appellant's affairs with the Insurance Company. The contents of the letters are not shown.

It further appears that Londergan and Shanks surrendered the shares of stock held by them in the Investment Company some time after the stock was sold to appellant and received payment therefor. Members of their respective families also held stock for which full payment was made. At a meeting of the board of directors on a later date, the transaction by which Londergan received payment for his stock was denounced as fraudulent and an action was commenced against him. It was on or about the date of the last transaction with appellant when the two corporations, by mutual agreement, canceled their relations and all contracts between them, and the sale of the Medical Life to a Royal Union Insurance Company was approved. Early in June, 1926, a receiver was appointed for the Investment Company and, as we understand the record, its affairs are now closed. Appellant received something over $2,000 from the corporation to be applied upon his claim against it. Appellant has apparently, therefore, exhausted his remedy against the corporation. There are some other facts and circumstances tending to show that the stockholders of the Investment Company made some effort to recoup their losses from the corporation, but there is no direct evidence from which a jury could have found that any of appellees, that is Shanks, Hutchison or Haffa knew anything about the fraudulent representations that were made by Smalling to appellant. As stated, the corporation was insolvent, or practically so, and it is conceded by counsel for appellee that its officers are presumed to have known its financial condition. Appellant was at a great disadvantage in securing proof of the fraud and conspiracy charged in his petition. This was true because he had to rely largely upon the testimony of adverse parties or employees of the corporation. The most that can be said for the testimony is, in so far as the appellees named are concerned, that it tends to create suspicion as to the fairness and integrity of the officers of the corporation. A jury should not, however, be permitted to speculate upon more or less disconnected and collateral matters in arriving at a conclusion that each and all of appellees were guilty of fraud. They were not copartners and sustained a wholly different relationship to the purchasers of stock.

It is urged that as to the second transaction, some duty was imposed upon the officers of the corporation having knowledge thereof

to divulge its true condition to appellant, who was then a stock-holder. It is true that officers of a corporation in some relation-ships act in a fiduciary capacity. There is no evidence that Shanks or any other officer of the company except Londergan, in fact, knew of the fraud that had been perpetrated. They, of course, knew the stock had little value.

Much emphasis is assigned by appellant to two circumstances not previously referred to. It appears that on the second visit of Smalling to the home of appellant the latter said that if he pur-chased additional stock he desired to pay therefor with a certificate of deposit which matured some months later. Smalling called the office of the Investment Company by telephone and said to the party answering: "Hello, Jim." Smalling informed whoever he was talk-ing with that appellant desired the corporation to hold the certificate of deposit until it matured. Smalling then stated to appellant that the company would hold the certificate. It was held about fifteen days and then deposited by the corporation for payment. Shanks did have possession of the certificate, but he delivered it to some other person whose identity is not disclosed. The record does not show who in the office was known as "Jim." The initials of Shanks are "J. H."

As to the appellees Shanks, Hutchison, and Haffa, the court is of the opinion that appellant has failed to make out a prima facie case.

There is no proof of a conspiracy or participation in the fraud-ulent representations on their part. Testimony was introduced from which a jury might find that the appellee Mrs. Smalling aided and assisted her husband in his fraudulent representations and transac-tions with appellant. She went with him and appears to have prob-ably known of the efforts of her husband to accomplish the sale by fraud. The evidence against her is, however, far from conclusive.

Without going into the details of the testimony, the court is convinced that the motion for a directed verdict in behalf of the Smallings should have been overruled. It follows that the judg-ment as to them must be and is reversed, and as to remaining ap-pellees it is affirmed.—Affirmed in part; reversed in part.

CLAUSSEN, C. J., and MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.